JOHN E. MULLEN, Respondent, *v.* CHARLES W. LITTLE, Appellant.

Third Department, January 8, 1919.

**Master and servant — injury to farmhand loading ice into ice-house — contributory negligence — burden of proof — plaintiff not entitled to protection of Workmen's Compensation Law.**

Where a farm laborer employed to load ice into an icehouse knew that the skid on which the ice was moved would rise in the air when the ice reached a portion of the skid which extended into the building, he was guilty of contributory negligence in placing his foot between the bars of the skid when attempting to push a piece of ice which had become jammed in the doorway and he cannot recover for the resulting injuries.

The burden of establishing the contributory negligence of the plaintiff was upon the defendant, but may be shown by the testimony of the plaintiff himself.

While ice harvesting is a hazardous employment under the Workmen's Compensation Law, the work carried on by the plaintiff in the present instance, which was not for the pecuniary gain of his employer, was not within the protection of the statute, the plaintiff being merely a farm laborer, and hence his contributory negligence bars a recovery.

APPEAL by the defendant, Charles W. Little, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 12th day of June, 1918, upon the verdict of a jury for $1,000.

*Mills & Mills* [*Borden H. Mills* of counsel], for the appellant.

*Herman J. Diekman* [*Robert H. McCormic* of counsel], for the respondent.

COCHRANE, J.:

This is an action under the Employers' Liability Act, now a part of the Labor Law (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], art. 14, as amd. by Laws of 1910, chap. 352). Plaintiff was employed as a farm laborer. In the performance of his duties he was injured on December 29, 1917, while filling an icehouse with ice for use on the farm. The ice was being unloaded from a sleigh into the building. It entered the building through a door two and one-half feet wide, the bottom

of the door being about two feet from the ground outside the building. Two logs about six feet long and thirty inches in diameter were placed in front of the door lengthwise with the building, the width of the logs thus extending about five feet in front of the door. The sleigh loaded with ice was backed against these logs. Upon the logs and between the sleigh and the building was placed a skid temporarily improvised for the occasion. It weighed less than 100 pounds and was seven feet long, consequently about two feet of it projected within the building. There was a slight incline from the sleigh to the building. From the door sill to the bottom of the space within the building was about six feet except that this space was partially filled with ice. The plaintiff testifies that the logs formed a solid foundation for the skid. At the time of the accident twelve loads of ice had been placed within the building. It was the third day of the work. Usually the plaintiff was assisted by the foreman in unloading. The plaintiff ordinarily stood on the logs outside the skid, which was two and one-half feet wide, and guided the pieces of ice as they slid from the sleigh toward the building. The pieces of ice in dimensions were about twenty-six by twenty inches and fourteen inches thick and weighed from 250 to 300 pounds. The accident occurred while the thirteenth load was being unloaded. Plaintiff at the time was unassisted. The implement with which he was working was an ice tongs. A pike pole was sometimes used, but he says it was not present at the time of the accident. A piece of ice longer than usual slid down the skid and wedged in the doorway as it was entering the building. To release it the plaintiff, standing on the logs by the side of the skid, placed one foot within one of the spaces formed by the longitudinal slats or parts of the skid. When the ice was released it slid over the two feet of the skid projecting within the building, naturally causing the part of the skid outside the building to be projected upward, which it did, throwing plaintiff forward into the building, causing him to be injured.

It is the unqualified testimony of the plaintiff that every piece of ice from each of the twelve previous loads as it entered the building caused the end of the skid adjacent to the sleigh to be projected into the air. He says as much

as four or five feet. He testifies that when the first piece of ice was placed in the building he called the attention of the foreman to the danger, saying: " If it hits you, you will find out." The skid may have been an inadequate appliance, but its inadequacy was fully understood by the plaintiff as well as the danger arising therefrom. The plaintiff admits that he had previously had much experience in handling ice. Standing on the logs outside the skid as he had previously done while unloading the twelve loads he was in a place of safety. No reason is apparent why he could not from that position have released the piece of ice in question when it wedged in the doorway. The extreme width of the skid and of the doorway was only two and one-half feet, and a piece of ice twenty inches wide could easily have been manipulated by means of his ice tongs from the side of the skid. Instead of doing so he placed one foot not even on the skid but on the log in the space between the parts of the skid. This position he assumed with positive knowledge of the natural consequences. It was a matter entirely within his own control. There was no necessity for haste nor any occasion for excitement nor anything in the situation to disturb his judgment or produce a lack of realization of the natural consequences of his act. He was free to determine his position. The logs presented an uneven surface on which to stand, but the fact of their firmness and stability is placed beyond question by the testimony of plaintiff. It seems clear that the task before the plaintiff could readily have been accomplished while he remained standing beside the skid and that there was no necessity which required him to place himself in a position of known danger. The case is not at all like that of *Maloney* v. *Cunard Steamship Company* (217 N. Y. 278), cited by plaintiff. There it was necessary for the plaintiff to use the defective appliance in the manner in which he was using it at the time of the accident. Here no such necessity existed. The manner of its use constituted contributory negligence. The burden of establishing contributory negligence was on the defendant, but on the testimony of the plaintiff himself his negligence clearly contributed to the accident.

The plaintiff urges that the question of contributory negligence is eliminated for the reason that the case falls within

the Workmen's Compensation Law and if so section 11 makes that question unimportant. (Consol. Laws, chap. 67 [Laws of 1914, chap. 41], § 11, as amd. by Laws of 1916, chap. 622.) Ice harvesting is a hazardous employment under that act (§ 2, group 25, as amd. by Laws of 1916, chap. 622, and Laws of 1917, chap. 705), but such employment was not in this instance " carried on by the employer for pecuniary gain " within the meaning of the statute (§ 3, subd. 5, as amd. by Laws of 1917, chap. 705). The plaintiff was in reality a farm laborer (§ 3, subd. 4, as amd. by Laws of 1917, chap. 705) and the ice was being stored for use on the farm and only as incidental to farm purposes. Hence the case is not within that act.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. The court disapproves the finding that the plaintiff was not negligent.

All concurred.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of the finding that the plaintiff was not negligent.