31 P. (2d) 255

## KOGER v. A. T. WOODS, Inc.

### No. 3933.

Supreme Court of New Mexico.

March 19, 1934.

Caswell S. Neal, of Carlsbad, for appellant.

J. H. Jackson, of Artesia, for appellee.

ZINN, Justice.

Appellee is engaged in farming 600 acres of irrigated land in Eddy county. Appellant, without any agreement to be bound by the Workmen's Compensation Act (1929 Comp. St. § 156-101 et seq.), was employed by appellee. The appellee used two gas engines to supply power to pump water from wells to be used for irrigation purposes. Appellant was engaged in the operation and care of the engines, which required about two hours a day, and as straw boss of the other employees of the appellee in the operation of the farm, and on occasion operated the tractor on the farm.

On July 15, 1930, while appellant was engaged in wiping the grease from one of the engines with a rag, his right hand was jerked into the engine, causing the loss of the first and second fingers. He filed claim for compensation under the Workmen's Compensation Act.

The court concluded as a matter of law that the appellant was not entitled to judgment because he was not engaged in an extrahazardous employment within the meaning of the Workmen's Compensation Act, being engaged in agricultural work. The claim of appellant was denied and dismissed. From the judgment this appeal is prosecuted.

Appellant contends that his employment came within the classification of extrahazardous occupations and pursuits as either "power works" or "engineering works." In a very able brief, counsel for appellant attempts to prove that, at the time the appellant was injured, he was operating engines to produce "power" to pump water from the wells to be used for irrigation purposes. With this theory we cannot agree.

The operation of the two engines was merely incidental to the main pursuit, which was farming. Appellant was not merely engaged in caring for the engines as a separate and distinct employment, but as a part and parcel of the entire agricultural enterprise, in which he also participated as a straw boss and tractor operator.

Our statute does not expressly exclude persons engaged in "agricultural pursuits" as is done in many acts of other states. The statute in effect at the time of the accident, 1929 Comp. St. § 156-110, specifically enumerates what constitute extrahazardous occupations and pursuits, and farming or agriculture, either "dry" or "irrigation," are not among those enumerated.

Expressio unius est exclusio alterius applies to a case like this. It is clear from the context that "agricultural pursuits" are not included in the classification of "extrahazardous occupations."

We may note that this section was originally Laws 1917, ch. 83, § 10, of the original Workmen's Compensation Act. In 1929, this section was amended to include "road building and construction" and "including all employees of telephone and telegraph companies." Laws 1929, ch. 113, § 10, amending Laws 1917, ch. 83, § 10. This amendment did not include "agricultural pursuits." We note that this law was again amended by Laws 1933, ch. 178, § 2, to include "all duly elected or appointed peace officers of the state, counties or municipalities, and the warden and all guards employed at the State Penitentiary," but did not include "agricultural pursuits."

The failure of the original Workmen's Compensation Act to include therein "agricultural pursuits," and the subsequent amendments including others, but not including "agricultural pursuits" is significant of the legislative intent to exclude from the operation of the act pursuits other than those expressly enumerated. Were we reluctant to apply the rule that the expression of one thing is the exclusion of another, such expressions of legislative intent as indicated in the

amendments to the original act to include expressly other hazardous occupations and not including "agricultural pursuits" would evidence an intention to only include within the terms of the act those expressly enumerated therein.

This rule has been followed in construing Workmen's Compensation Acts. Aylesworth v. Phœnix Cheese Co. et al., decided in 1915, 170 App. Div. 34, 155 N. Y. S. 916.

■ As to appellant's theory that, even if "agriculture" as an industry does not come within the meaning of the Workmen's Compensation Act as an extrahazardous occupation, nevertheless he was employed to look after a "power-plant" and necessarily comes within the protecting arm of the act, we cannot agree.

In the instant case, the pumps were "agricultural implements."

"A steam engine, used in connection with a pump for irrigating, with a thresher for threshing, and possibly with plows and harrows for cultivating, a crop of rice, and not shown to have been used for any other purpose than the cultivation and harvesting of such crop, is a farming utensil. * * *" Lahn & Co. v. Carr, 120 La. 797, 45 So. 707.

The term "agriculture" is defined in 2 C. J. 988, as follows: "The art or science of cultivating the ground, especially in fields or large quantities, *including the preparation of the soil, the planting of seeds, the raising and harvesting of crops,* and the rearing, feeding, and management of live stock; tillage, husbandry, and farming." (Italics ours.)

In the raising and harvesting of crops, upon the arid soil of New Mexico, water is as essential as the seed. It would be useless to plow the ground, plant the seed, and then not supply water to the thirsty soil. The means employed to supply that water are as much a part of the process of farming and as incidental thereto as is the plow which turns the soil, the harrow that pulverizes it, and the seeder which deposits the seed. We could not logically say that the workman who is employed largely in the operation of a modern power-driven gang plow to turn the soil came within the provisions of the act, and we cannot say that the laborer to whom is assigned the task of caring for the engine that pumps the water comes within the act.

There are many decided cases in which this question has been answered. Note, 7 A. L. R. 1296; 13 A. L. R. 955; 35 A. L. R. 208; 43 A. L. R. 954.

■ It is difficult to lay down any definite rule or test by which we can determine whether a claimant was engaged as a farm laborer or in some other capacity. We hold not only upon authority, but on reason and logic, that the true test is not the particular item of work the injured employee is doing, but rather the general nature and the object of the employment. As was said by the Supreme Court of Minnesota, in a very recent case, decided November 4, 1932: "In determining whether a workman is a farm laborer, and hence not within the Workmen's Compensation Act (Gen. St. 1923, § 4268), the nature of the employment is the test rather than the particular item of work he is doing

when injured. Austin v. Leonard, Crossett & Riley, 177 Minn. 503, 225 N. W. 428; Peterson v. Farmers' State Bank of Eyota, 180 Minn. 40, 230 N. W. 124." Hebranson v. Fairmont Creamery et al., 187 Minn. 260, 245 N. W. 138, at page 139.

Another very recent Tennessee case lays down this rule: "We think a sound general rule may be taken from the opinion in Dowery v. State, 84 Ind. App. 37, 149 N. E. 922, 923, wherein it was said: 'It is to be observed that the statute does not classify the employee in accordance with the general occupation or business of the employer. Whether a laborer is or is not a farm employee is determined from the character of the work he is required to perform.' This rule is properly interpreted in Peterson v. Farmers' State Bank, 180 Minn. 40, 230 N. W. 124, by the holding: 'Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to, to determine whether he is a farm laborer. That is what is meant by the statement that it is "the character of the work which the employee is hired to perform, which is the test of whether the employee is a farm laborer." ' These propositions are supported by many cases. Fleckles v. Hille, 83 Ind. App. 715, 149 N. E. 915; Beyer, v. Decker, 159 Md. 289, 150 A. 804, 805; Shafer v. Parke, Davis & Co., 192 Mich. 577, 159 N. W. 304; Greischar v. St. Mary's College, 176 Minn. 100, 222 N. W. 525; Ocean Accident & Guarantee Co. v. Industrial Commission, 69 Utah, 473, 256 P. 405; Peters v. Cavanah, 132 Kan. 244, 295 P. 693." Ginn v. Forest Nursery Co., 165 Tenn. 9, 52 S.W.(2d) 141, at page 142.

From the authorities we find that a farm laborer who, while in the performance of his duties, was injured in filling an icehouse with ice for use on the farm, is a farm laborer, where the ice was being stored for use on the farm and only incidental to farm purposes, though the rule might .have been otherwise had the laborer been employed by a commercial ice company. Mullen v. Little, 186 App. Div. 169, 173 N. Y. S. 578.

The repair of farm buildings is part of the routine work of a farm laborer, and such a laborer injured while at work is excluded. So a workman employed by a farmer to help build a corncrib is not employed within the meaning of extrahazardous employment. Uphoff v. Industrial Bd., 271 Ill. 312, 111 N. E. 128, L. R. A. 1916E, 329, Ann. Cas. 1917D, 1.

In the leading case of Miller & Lux v. Industrial Acci. Commission, 179 Cal. 764, 178 P. 960, 7 A. L. R. 1291, where the injured employee was hired by a farmer to devote his entire time to the repair of farming implements in a shop devoted to such repairs, the court held that the employee was engaged in farming within the meaning of the California act excluding farming from the operation of the act.

In the recent case of Ganzer v. Chapman & Barnard et al., decided May 3, 1932, by the Supreme Court of Oklahoma, reported in 157 Okl. 99, 11 P.(2d) 115, where, by the provisions of the laws of that state, there was specifically excepted from the list of hazardous

occupations those engaged in agriculture, horticulture, or dairy or stock raising, the court said: "After careful consideration of the case at bar, we conclude and hold: That the employee of one engaged in the business of stock-raising or agriculture, employed to dredge, construct, or build ponds, using a machine for that purpose, for the improvement of the ranch and as an incident to the conduct and operation of the ranch, does not come within the purview of the Workmen's Compensation Act, and said employee cannot recover compensation for an injury sustained while so employed." Ganzer v. Chapman & Barnard et al., 157 Okl. 99, 11 P.(2d) 115, at page 117.

■ The employment of the appellant in the case before us required him to tend the pumps, act as straw boss, run a tractor—the usual work on a 600-acre irrigated farm. The harvesting and marketing of grain, the transplanting and care of tobacco plants, and the delivery of a bale of cotton from farm to shipping point, are all ordinary incidents of farm labor, as is the work and labor of tending to the pumps on an irrigated farm; the difference being only in the kind and nature of the farm where employed. The labor performed by appellant and contemplated by his employment was agricultural in the literal sense and meaning of the word, and we think we would not be justified in holding that he was not a "farm or agricultural laborer."

Had the appellant been sent to repair a binder, thresher, mower, reaper, stacker, rake, plow or harrow, would he be in any different position that in the instant case where he went to clean a pumping machine?

Had the employee been sent to repair a headgate or flume on the irrigation system, would he be in any different position? We must necessarily hold not. The injured workman was employed to labor on his employer's farm, and the pumping of the water and the use of the pumps for that purpose was incidental to a general irrigated farm, and does not come within the operation of the Workmen's Compensation Act.

■ It may seem a harsh rule that, if the appellant had been injured while working on the same piece of machinery but employed in pumping water at a waterworks plant or in a dredging operation, he would be entitled to compensation, whereas being engaged in a farming or agricultural pursuit he is not entitled to compensation. That is a matter of legislative policy, and we are bound to interpret and apply the law as it is given us.

The judgment of the court below will be affirmed. It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.