**101 P.2d 1021**

### STAHMANN v. MARYLAND CASUALTY CO.

### No. 4495.

Supreme Court of New Mexico.

April 8, 1940.

W. C. Whatley, of Las Cruces, for appellant.

Mechem & Mechem, of Las Cruces, for appellee.

ZINN, Justice.

The following facts were pleaded by the appellant (plaintiff below). On May 16, 1938, pursuant to an application on the part of the appellant, the appellee (defendant below) issued a policy of Workmen's Compensation Insurance, whereby the appellee agreed to pay the entire amount of compensation due any employee of appellant and to pay, for the benefit of any person entitled under the Workmen's Compensation Act, Comp.St.1929, § 156-101 et seq., the proper cost of whatever medical, surgical, nurse or hospital services required to be paid by the provisions of the Workmen's Compensation Act. The policy was to apply to injuries sustained by reason of the business operations of the appellant.

The complaint alleged that one Tomas Gonzales was employed as a mechanic in the machine shops on the appellant's farm. His employment was for the purpose of the appellant's business, which business was that of farming, in which business there were used many kinds of modern farm implements and machinery, including combines for the harvesting and threshing of crops. It was the duty of Gonzales to work in the repair, operation and maintenance of these implements and machines. On August 5, 1938, Gonzales, while oiling a combine, sustained by accident serious personal injuries arising out of and in the course of his employment. These injuries necessitated the taking of Gonzales to a hospital in El Paso, Texas, to receive proper medical and hospital attention.

Immediately following the injury to Gonzales, the appellant reported the injury to appellee and demanded that appellee procure the necessary medical, surgical and hospital attention for Gonzales, and pay Gonzales whatever compensation he was entitled to because of the injury. The appellee failed and neglected to comply with the demand.

The appellant again on September 9, 1938, more than one month after the accident, made demand upon appellee to make such payments forthwith. This the appellee refused to do. Thereupon the appellant was compelled to, and did, pay the medical and hospital bill and the compensation due Gonzales under the Workmen's Compensation Act, in the total sum of $375, which sums appellant brought suit to recover from appellee.

To the complaint alleging the above facts the appellee demurred on two grounds, as follows:

"1. That the complaint fails to state a cause of action in that it shows on its face that the plaintiff and his employee, Tomas Gonzales, at the time of the injury complained of, were engaged in the occupation of farming, and that the policy attached to the complaint, and on which suit is based, does not cover farming operations or employees of the plaintiff engaged therein.

"2. That the complaint fails to state a cause of action in that the policy attached to the complaint and upon which this action is based, provides that no suit shall be brought by the plaintiff on the policy unless the same is brought after the amount of claim or loss shall have been fixed and rendered certain either by final judgment against the employer after trial of the issue, or by agreement between the parties, with the written consent of the insurance company, and there is no allegation in the complaint to the effect that the plaintiff's claim or loss has been fixed or rendered certain by either of the methods provided in said policy."

The first ground of the demurrer was overruled, but the second ground was sustained. The appellant refused to plead over, standing on his complaint, which was then dismissed. From this judgment of dismissal, this appeal is prosecuted.

The appellant's position before us is that the policy of insurance is one of a dual nature.

First: It is a contract to reimburse the insured employer for any loss he might sustain by reason of his employees becoming injured in line of duty and entitled to compensation under the Workmen's Compensation Act.

Second: It is a contract to indemnify the appellant against loss by reason of any liability which may be imposed on him by law for damages on account of injuries to his employees.

The two provisions of the policy from which the appellant draws such theory are as follows:

"I.   (a) To Pay Promptly to any person entitled thereto under the Workmen's Compensation Act and in the manner therein provided, the entire amount of any sum due, and all instalments thereof as they become due,

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law.

"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy,

while this Policy shall remain in force. Nothing herein contained shall operate to so extend this Policy as to include within its terms any Workmen's Compensation Law, scheme or plan not cited in an endorsement hereto attached.

"I. (b) To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. In the event of the bankruptcy or insolvency of this Employer the Company shall not be relieved from the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency, an execution against this Employer is returned unsatisfied in an action brought by the injured, or by another person claiming by, through or under the injured, then an action may be maintained by the injured, or by such other person claiming by, through or under the injured, against the Company under the terms of the Policy for the amount of the judgment in said action not exceeding the amount of this Policy."

Appellee, however, contends that under paragraph I (a) of the policy the company is liable only directly to the employee who is covered by the policy, or to his dependents in case of death, and is enforceable against the company only by the employee or his dependents, and that the appellant is not a proper party to bring this suit.

Appellee cites Condition D of the policy, labeled "Employee's Rights," to support such contention. This reads as follows: "Condition D. The obligations of Paragraph One (a) foregoing are hereby declared to be the direct obligations and promises of the Company to any injured employee covered hereby, or, in the event of his death, to his dependents; and to each such employee or such dependent the Company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees or such dependents and is enforceable against the Company, by any such employee or such dependent in his name or on his behalf, at any time and in any manner permitted by law, whether claims or proceedings are brought against the company alone or jointly with this Employer. If the law of any state in which the Policy is applicable provides for the enforcement of the rights of such employees or such dependents by any Commission, Board or other state agency for the benefit of such employees or such dependents, then the provisions of such law are made a part hereof as respects any matter subject thereto, as fully as if written herein. The obligations and promises of the Company as set forth in this paragraph shall not be affected by the failure of this Employer to do or refrain from doing any act required by the Policy; nor by any default of this Employer after the accident in the payment of premiums or in the giv-

ing of any notice required by the Policy or otherwise; nor by the death, insolvency, bankruptcy, legal incapacity or inability of this Employer, nor by any proceeding against him as a result of which the conduct of this Employer's business may be and continue to be in charge of an executor, administrator, receiver, trustee, assignee, or other person."

Appellee points out that the suit was not brought in behalf of employee Gonzales, but for the benefit of the appellant who paid the money as a volunteer and is therefore not entitled to recover.

The appellee contends that its liability under paragraph I (b) is conditioned only upon the determination of the amount due after such claim or loss has been fixed and rendered certain either by final judgment against the employer after trial or by agreement between the parties with the written consent of the company.

Appellee cites Condition G of the policy labeled "Actions," to support its theory. Condition G reads as follows: "Condition G. No action shall lie against the Company to recover upon any claim or for any loss under Paragraph One (b) foregoing unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the Employer after trial of the issue or by agreement between the parties with the written consent of the Company, nor in any event unless brought within two years thereafter."

Appellee points out that no suit was ever brought by employee Gonzales, against appellant, and no judgment was ever rendered against appellant, and that any payment made by appellant was not made with the written consent of the appellee.

This latter theory is the basis of the second ground of the demurrer and it is apparently upon this theory that the trial court sustained the appellee's demurrer.

Appellant in his brief argues that his claim was founded upon Sec. 1(a) of the policy and not upon Sec. 1(b) and that therefore Condition G is not applicable. Appellee argues that if appellant plants himself upon Sec. 1(a) of the policy, then appellant has no cause of action because the injured employee is the only one who can bring the suit.

We treat the subject as we presume the trial court did, namely, that secs. 1(a) and 1(b) are to be read together. Sec. 1(a) covenants to pay directly to the employee, or his dependents, any sums due under the Workmen's Compensation Act, and Sec. 1 (b) is an indemnity provision for the benefit of the employer who may be compelled by law to pay damages " * * * on account of such injuries to such of said employees as are legally employed * * * ". The injuries referred to are those for which an employer would be called upon to respond under the Workmen's Compensation Law, as well as any common-law liability. We believe the trial court so treated the same, and we shall do so here.

The question then is simply this: Was the appellant justified in paying the sums due Gonzales as compensation for disability, and to the hospital in Gonzales' behalf for medical care and treatment, in light of the restrictive covenants contained in Condition G?

Gonzales was injured on August 5th. Appellee was immediately notified and demand made upon him to care for Gonzales and pay the compensation to which he was entitled under the law. This the appellee failed to do. On September 9th, the appellant, having become obligated to the hospital to which Gonzales was taken, and the surgeon who attended and treated Gonzales, again made demand upon appellee to make such payments forthwith. Upon the refusal of appellee to pay for such hospital and medical services and to pay compensation, appellant did pay and discharge the medical and hospital expenses, and the compensation to which Gonzales was entitled under the Workmen's Compensation Law of New Mexico in the sum of $375.

We believe this case comes squarely within the rule laid down by the Court of Appeals of Kentucky in the case of Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S.W. 217, L.R.A.1915F, 958.

Under Sec. 1(b) of the contract the appellant was entitled to be indemnified against loss incurred by reason of the liability imposed upon him by the Workmen's Compensation Act. Condition G of the contract provided that the insurer would

not be responsible for any settlement made unless such settlement was first authorized in writing by the insurer. The appellant notified the appellee and twice made demand upon appellee to settle and pay, which it failed and refused to do. The appellant, as the employer, may under such circumstances consider that the insurance company denies its liability thus permitting the appellant to settle with its employee and then later sue the insurance company to establish liability if any.

In the case of Interstate Casualty Co. v. Wallins Creek Coal Co., supra, the facts, briefly stated in the case, are as follows: "The appellee coal company carried employers' liability insurance in the appellant company. While this policy was in force, and in August, 1912, John Miller, an employé of the coal company, was injured through its negligence in an accident, and soon thereafter the coal company settled his claim for damages growing out of the injury by the payment to him of $336, having previously expended in care and attention given him $59.01, making the total amount paid out $395.01. To recover this sum, it brought this suit against the casualty company, and the law and facts having been submitted to the court, there was a judgment in its favor for the full amount claimed." Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S.W. 217, at page 218, L.R.A.1915F, 958.

In that case the trial court found as a fact that the Casualty Company was notified in proper time of the accident but did

not authorize the insured to make the settlement, and concluded as a matter of law that the insured had a right to settle the case.

In the case before us the insured notified the Insurance Company of the accident and nothing was done by the appellee for approximately a month. The appellant again notified the appellee, and as alleged in the complaint and admitted by the demurrer, the appellee refused to pay. Under such circumstances, as stated by the Kentucky Court, we quote: "When an insurance company issues as indemnity policy like the one here in question, and an injury happens for which it must indemnify the insured, justice to the insured requires that the insurance company should, upon receiving notice of the accident and injury, determine, as speedily as the circumstances of the case will permit, whether it wishes the insured to settle or contest the claim for damages, and notify the insured of its desire. The claim might be of such a character as that the amount of damages recovered in a lawsuit by the injured party would exceed the indemnity and subject the insured to considerable loss and damage, and therefore the insured should have a right to know with reasonable promptness the attitude of the indemnity company, so that he might be in a position to take such action as would not only protect the indemnity company, but save himself from loss and damages. The letter of the policy contract gives to the insurance company the right to control the conduct of the insured in respect to the adjustment of any claim for damages that may be presented. It has the right to deny its liability entirely, or to insist that the claim for damages shall be contested, or to advise that it be adjusted or settled in some way. Having this power of control over the matter, it should not be allowed, by inaction or indifference, to prejudice the rights of the insured. If it denies its liability, it should say so, and if it admits its liability, it should advise what steps it wants the insured to take. Unless it does one of these things with reasonable promptness, the insured by its indifference to its rights is placed at a disadvantage that it ought not to be subjected to. For example, the insured might, within a reasonable time after an accident has occurred for which it admits its liability, and which is covered by its indemnity policy, be able to compromise and settle the claim for a reasonable sum, thus saving the annoyance of having the claim in an unsettled condition and the expense that would follow litigation, and also the loss that might be incurred if the claimant succeeded in recovering more than the indemnity provided. In this case the insured, after waiting more than three months for the indemnity company to direct what it wished done, considered it advisable to compromise the claim. The settlement with the claimant was made in good faith, upon reasonable terms, and was such a settlement as a prudent, careful business man would have made. Under these circumstances, the provisions in the policy contract prohibiting a settlement unless directed in writing should be considered waived, and the insurance company

estopped to rely on the provisions to defeat a recovery by the insured upon the ground that the insured settled the claim without its authority." Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S. W. 217, at page 219, L.R.A.1915F, 958.

Appellant paid Gonzales a sum that is not questioned by appellee as being improper in amount. The payment was not made until the appellee had its opportunity to either settle or demand suit. Appellee stood by and refused to act. It thereby waived the conditions imposed by Condition G of the contract. To hold otherwise would enable the insurance company to take the benefits of the contract, that is the premiums, and relieve itself of the burdens of its contract by inaction.

As stated by the Kentucky court in the Wallins Creek Coal Co. case, supra: "If, under facts similar to those appearing in this case, an indemnity company could escape liability under the clause in its contract that it should not be liable for expenses incurred without its consent, by failing or refusing to do or say anything to the insured that would indicate its wishes, it would be an easy matter for an indemnity company, under a contract like the one here involved, to relieve itself from all liability by simply failing or refusing to do or say anything after it had received notice of an accident and injury for which it was liable. Such a construction of the contract would enable the insurance company to perpetrate an intolerable fraud on the insured and make it, if allowable, an easy matter to avoid liability in any case in which it chose to pursue this course. The contract should be so construed as to afford protection to both parties, not giving either the right to subject the other to unnecessary loss or expense. The insured under it cannot bind the insurer by unauthorized settlements if the insurer declines to make a settlement within a reasonable time after it has notice of the claim, nor should the indemnity company be allowed, by its indifference or nonaction, to subject the insured to unnecessary loss and expense that might have been avoided if it had acted with reasonable promptness. Each of the parties to a contract like this has rights that the other must observe, and neither can, by negligence or indifference or failure to act, violate the spirit of the contract in such a way as to put upon the other loss that it need not have suffered." Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S.W. 217, at page 219, L.R.A.1915F, 958.

In principle, the refusal of the insurance company in the instant case to pay is analogous to the situation presented to the United States Supreme Court in the case of St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S. Ct. 400, 50 L.Ed. 712, and reviewed by the Kentucky Court in the Wallins Creek Coal Co. case, as follows:

"In that case the provision company had a policy of indemnity in the casualty company protecting it against loss for damages on account of bodily injuries suffered by any person through its negligence. The policy provided, among other things, that

the assured should give immediate notice, with full particulars, of any accident. Also that the casualty company would defend any suit that should be brought against it, or settle the same. There was a further provision that:

" 'The assured shall not settle any claim, except at his own cost, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceeding, without the consent of the company previously given in writing.'

"And another that:

" 'No action shall lie against the company as respects any loss under this policy unless it shall be brought by the assured himself to reimburse him for loss actually sustained and paid by him in satisfaction of judgment after trial of the issue.'

"It appears from the opinion that the assured became liable for damages on account of injuries sustained by a party through its negligence, and it immediately gave the notice required by the policy contract. After this the insurance company notified the assured that it denied liability on account of the damages resulting from the accident. Thereafter the injured party brought suit against the assured to recover damages for the personal injuries sustained, and the insurance company was notified of the institution of this suit, but declined to undertake the defense, upon the ground that its policy contract did not cover the liability. It further appears that the assured, apprehending that if the case went to trial there might be a judgment for a large amount, compro-

mised the suit by paying the claimant a reasonable sum, and such a sum as a prudent, careful business man would have paid in settlement of the claim. After this the assured brought suit against the casualty company to recover the amount so paid. The Circuit Court of Appeals certified to the Supreme Court for its decision the following questions, the substance of which is: (1) Did the denial of all liability by the assurer and its refusal to defend the suit release the assured from its agreement that it would not settle any claim except at its own cost without the consent in writing of the assurer, and also from the clause that the assurer should not be liable except for loss actually sustained by the assured in satisfaction of a judgment after trial of the issue? (2) Were the provisions that the assured should not settle any claim, except at its own cost, without the written consent of the assurer, and that no action should lie against the assurer unless brought to reimburse the assured for loss actually sustained and paid by it in satisfaction of a judgment after trial of the issues, waived by the assurer's denial of liability and its failure to defend the suit?

"The Supreme Court, in answering these questions, held that the insurance company, by denying liability and failing to defend the suit, waived its right to rely on the stipulations in the policy contract exempting it from liability if the assured, without its written consent, settled any claim, or unless the assured paid the amount asserted against it in satisfaction of a judgment after a trial. The conditions in the policy

contract in that case were identical with the ones in the policy contract here involved, and the only differences in the facts is that in that case the company advised the insured that it denied liability, and the insured did not settle the claim until after suit had been brought, while in this case there was no express denial of liability to the insured, and the loss was settled before suit was brought. This difference, however, in the facts is not a substantial one, as the insurance company in this case, by its failure, or rather its refusal, to direct the insured what it wished done, in effect denied its liability. In other words, it made up its own mind that it was not liable, and then concluded that it would not give the matter any further attention, and that the insured could do what it pleased. Under these circumstances the insured had the right to treat this inaction of the insurance company as a denial of liability on its part, and to act on the assumption that it would further refuse to recognize its liability by failing to undertake to defend any suit that the injured party might bring if living, and to make the best settlement it could." Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 176 S.W. 217, at pages 219 and 220, L.R.A.1915F, 958.

We hold that the failure and refusal of the appellee to pay when called upon by the appellant amounted to a waiver of the restrictive conditions contained in Condition G of the policy. The insured was thereby relieved of such provisions of the contract and could settle with his employee. If made in good faith as a reasonable and

prudent businessman would do, he could then sue the insurer, and upon establishing liability he can recover.

Appellee seeks to avail itself of its first ground of demurrer which was apparently not sustained by the trial court. The theory of appellee is that both the appellant and Gonzales were both engaged in an agricultural pursuit and therefore not within the protection and terms of the Workmen's Compensation Act. Citing Koger v. A. T. Woods, Inc., 38 N.M. 241, 31 P.2d 255.

However, the facts pleaded, and which are admitted by the demurrer, indicate that Gonzales was employed as a mechanic in the machine shop on the appellant's farm. A mechanic and not a farm laborer. In the Koger case the injured employee was employed on the farm to tend pumps, act as straw boss and to run a farm tractor and was therefore a farm or agricultural laborer. We do not find any such similar situation in the instant case as is here before us on complaint and demurrer. The rule in the Koger case is therefore not applicable.

For the reasons given the cause will be remanded to the District Court, with instructions to overrule the demurrer of the appellee.

It is so ordered.

MABRY, J., concurs.

SADLER, Justice (specially concurring).

I concur in the result but disagree with the portion of the statement in the opinion

to be italicized in the quotation to follow: "The injuries referred to [in sec. 1(b) of the policy] are those for which an employer would be called upon to respond *under the Workmen's Compensation Law,* as well as any common law liability."

Rather, I concur in the view accepted by counsel for both parties in the cause before us succinctly expressed by counsel for appellant (plaintiff below) in his brief in chief that paragraph 1(b): " * * * of necessity means damages incurred by reason of a common law liability and has no reference whatsoever to the provision of the Workmen's Compensation Law as contemplated in paragraph 1(a)."

Hence, the "no action" clause contained in Condition G is without application to workmen's compensation claims covered by paragraph 1(a) as argued by appellant. That it is without application is definitely shown by the very language of paragraph 1(a) expressing the insurer's covenant with the employer: "To pay promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due, (1) to such person because of the obligation for compensation for any such injury imposed upon *or accepted by* this employer under such of certain statutes, as may be applicable thereto," etc. (Italics mine).

The company (insurer) thus agrees with the employer that it will pay promptly and as a direct obligation of its own (Condition D) not only such compensation claims as may be imposed upon (meaning, of course, by action) but such also as may be accepted by the employer (meaning, of course, without action). Here, the employer did accept liability for the claim and called upon the insurer to make good its covenant to pay. This it refused to do and the employer paid the same. An action lies by the employer as of course for breach of the insurer's covenant to pay.

An employer's business may be such that some of his workmen are within the protection of the Workmen's Compensation Act and others without such protection. Or, the work of a certain employee may, at times, have the protection of compensation while on other occasions he may be engaged in work not affording such protection. Hence, it is sometimes the case that an employer will protect himself by insurance against both liabilities, viz., workmen's compensation liability and common-law liability for negligence. Frequently, the coverage is in one policy as in the case at bar. See Wood v. Employers' Liability Assurance Corporation, 7 Cir., 41 F.2d 573, 73 A.L.R. 79, and annotation following at 73 A.L.R. 86, supplemented in 117 A.L.R. 1299.

For the reason given, I think the demurrer should have been overruled. Hence, I concur in the result.

BRICE, J., concurs.

BICKLEY, C. J., concurs in the result.