The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>September 25, 2023</u>

**No. A-1-CA-37133**

**WILLIAM THAYER,**

     Plaintiff-Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Marci E. Beyer, District Court Judge**

Law Firm of Daniela Labinoti, P.C.
Daniela Labinoti
El Paso, TX

for Appellant

Miller Stratvert P.A.
Todd A. Schwarz
Luke A. Salganek
Albuquerque, NM

for Appellee

**OPINION**

**DUFFY, Judge.**

{1} Plaintiff William Thayer filed a complaint for breach of contract and bad faith after State Farm denied his claim for underinsured motorist (UIM) benefits. State Farm moved for summary judgment, arguing it was not liable for UIM benefits because Thayer had breached a contract provision requiring him to obtain State Farm's written consent before settling with the tortfeasor. Thayer acknowledged that he had settled without State Farm's permission, but asserted he had notified State Farm of the offer and waited more than a year before ultimately accepting the settlement. The district court granted State Farm's motion and dismissed the case with prejudice.

{2} The factual circumstances of this case are a matter of first impression in New Mexico and we must decide whether Thayer, after properly requesting consent to settle from his insurer, breached the consent-to-settle provision as a matter of law by settling with the tortfeasor before receiving the insurer's decision. The answer depends on whether the insurer acted reasonably to provide or withhold consent to the insured's settlement request. We hold that when an insurer has received notice of a proposed settlement between its insured and a third-party tortfeasor, but fails to notify its insured of the insurer's decision to either grant or withhold consent to settle within a reasonable amount of time, the insurer may have waived its right to rely on

a consent-to-settle clause. In such circumstances, the insured's settlement will not preclude recovery of UIM benefits. Because disputed issues of fact exist on these matters, we reverse.

**BACKGROUND**

{3}     In August 2011, Thayer, a New Mexico State Police officer, was directing traffic along Interstate 10 in Doña Ana County when a semi-truck and trailer crashed into the back end of a pickup truck, causing the pickup to ignite and severely injuring its driver. Thayer and another officer were in the path of the crash and quickly ran out of the way, but both were injured in the process.

{4}     The driver of the pickup truck filed a complaint for personal injury against the driver of the semi-truck (hereinafter referred to as the tortfeasor) and the tortfeasor's employer, Quality 1st Produce. Thayer and his fellow officer intervened with their own injury claims. Quality 1st was insured by Granite State Insurance and had $1 million in liability coverage available for the three claims.

{5}     In August 2012, Thayer attended a mediation with Granite State, during which he was advised that Granite State was tendering $900,000 to the injured driver of the pickup, and that the policy deducted costs and expenses from the amount of the limit. Thayer's fellow officer received $60,000 from the policy, and Granite State offered to settle Thayer's claim for the remainder—approximately $14,000—an amount less than his total damages. Thayer alleges that during the mediation, he called his own

2

insurance company, State Farm, to make an underinsured motorist claim and to request permission to settle.

{6} Thayer's policy with State Farm contained a consent-to-settle provision that required Thayer to inform State Farm of any settlement offer and State Farm to respond in writing. The policy stated:

**Consent to Settlement**

The *Insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

    a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

    b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

Thayer alleges that during his initial phone call to State Farm during the August 2012 mediation, he informed State Farm of the offer he had received from Granite State, but State Farm neither provided nor denied consent to settle. Thayer asserts that as a result, he was unable to settle his claims against the tortfeasor at the mediation.

3

{7} Thayer alleged in an affidavit that he tried to contact State Farm multiple times after the mediation without success. About seven months after the mediation, on March 8, 2013, Thayer's attorney sent State Farm a letter requesting consent to settle. The letter described the accident, Thayer's injuries and treatment, and stated that Granite State was offering to settle Thayer's claim for approximately $14,000, which represented the amount remaining under the policy.

{8} State Farm sent a letter in response on April 5, stating that it had called Plaintiff's attorney on March 12 to discuss the claim and had left a voice message. The letter went on to state:

> In order to sanction Mr. Thayer[']s settlement against Granite State Insurance, we will need the following documentation to begin our investigation:
>
> *Total payments to parties involved in this accident.
> *The declarations page confirming Liability coverage on the policy.
>
> We look forward to your call. Thank you.

Notably, although the letter indicated that State Farm would need additional information, the letter was unclear as to how the information would be obtained, i.e., whether State Farm would gather the documentation or whether it was asking Thayer to do so. Thayer did not respond.

{9} The following month, on May 16, State Farm sent a reservation of rights letter to Thayer. In addition to various reservation of rights statements, the letter stated, "If you have any information or materials that may aid us in the analysis of your

4

claim for coverage, please provide it to us as soon as possible." As with the previous letter, the May 16 letter did not directly request any specific documentation from Thayer or state that Thayer needed to contact State Farm regarding his claim. Again, Thayer did not respond.

{10} State Farm sent a second reservation of rights letter on June 27, which contained the same general request quoted above and stated that if State Farm did not hear from Thayer within thirty days, State Farm would close the claim. Thayer again did not respond.

{11} Thayer eventually accepted a settlement in the amount of $28,780 from Granite State in January 2014, having never received a written response from State Farm indicating that it was either providing or withholding consent to Thayer's request to settle. Thayer notified State Farm of the settlement by letter in February 2014 and requested that State Farm tender the limits of his UM/UIM insurance. State Farm denied the claim.

{12} Thayer filed suit, asserting claims for breach of contract, bad faith, and violation of the Unfair Insurance Practices Act and Unfair Trade Practices Act. Thayer alleged that State Farm improperly disclaimed coverage and breached the UM/UIM contract. Thayer's extra-contractual claims were based on allegations that State Farm acted in bad faith by failing to honor its contractual and statutory obligations under New Mexico law. Thayer's complaint included as exhibits the

5

police report and two asset investigations—one on the tortfeasor and another on Quality 1st—that had been produced in the underlying lawsuit against the tortfeasor. Those investigations showed that as of mid-2012, the tortfeasor had limited assets and was effectively judgment-proof. Quality 1st had approximately $130,000 in liquid assets but was also subject to five different UCC liens in unspecified amounts that were secured with tangible and intangible assets.

{13}     State Farm moved for summary judgment, arguing that Thayer was not entitled to UIM benefits under the policy because he had released the tortfeasor without State Farm's consent, in breach of the policy's consent-to-settle provision. State Farm asserted that it suffered substantial prejudice because the settlement destroyed its subrogation rights against Quality 1st, and as a result, Thayer was not entitled to UIM coverage as a matter of law. State Farm attached as exhibits to its motion Thayer's letters to State Farm, a single page from the policy containing the consent-to-settle provision,[1] and an affidavit from a certified fraud investigator who

---

[1]State Farm asserted as an "undisputed material fact" that the policy at issue states, "There is no coverage: 1. for an insured who, without our written consent, settles with any person or organization who may be liable for the bodily injury or property damage." In support, State Farm referenced the single page of the policy attached as an exhibit to its motion. That exhibit contains the consent to settle provision quoted in paragraph six of this opinion, but does not anywhere contain the language quoted by State Farm in its motion. Nevertheless, Plaintiff did not challenge State Farm's representation of the policy language in his response in the district court, and we therefore accept that the policy contains the coverage exclusion represented by State Farm. *See* Rule 1-056(D)(2) NMRA ("[M]aterial facts set forth

had completed an asset investigation of the tortfeasor and Quality 1st in April 2014, after Thayer had settled his claims against them. State Farm's investigation showed that Quality 1st still had significant liquid assets but did not list any UCC liens or other encumbrances on Quality 1st's assets.

{14} Thayer responded to the motion by arguing that State Farm had acted with unreasonable delay in responding to his request for consent to settle, and that he had accepted the settlement only after State Farm failed to respond to his request for seventeen months. He also argued that State Farm breached its duty to timely investigate his claim. The exhibits Thayer attached to his response included affidavits from Thayer and his wife stating that they had contacted State Farm to request consent during the August 2012 mediation, the asset investigation conducted on the tortfeasor, and correspondence from State Farm to Thayer's attorney. Thayer contended that fact issues remained as to whether he had waited for a reasonable period of time before accepting the settlement, and whether State Farm had acted reasonably under the circumstances. State Farm responded that it had left one voicemail and sent three letters (two of which were reservation of rights letters) to Thayer's attorney requesting a conversation regarding and information related to Thayer's claim for UM/UIM insurance, to which no response was received.

---

in the statement of the moving party shall be deemed admitted unless specifically controverted.").

{15} After a hearing, the district court granted State Farm's motion and dismissed all of Thayer's claims with prejudice.[2] Thayer appeals.

**DISCUSSION**

## I. Standard of Review

{16} "We review de novo the question of whether the application of law to undisputed facts supports a summary judgment determination regarding uninsured motorist coverage." *Haygood v. United Servs. Auto. Ass'n* (*USAA*), 2019-NMCA-074, ¶ 7, 453 P.3d 1235. "[I]n reviewing a district court's summary judgment decision, we conduct a whole-record review of the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Ridlington v. Contreras*, 2022-NMSC-002, ¶ 13, 501 P.3d 444 (internal quotation marks and citation omitted). If the record indicates a genuine dispute as to any material fact, summary judgment will be reversed and the case remanded for determination at trial. *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 15, 123 N.M. 752, 945 P.2d 970.

## II. Consent to Settle

{17} As a general matter, consent to settle provisions in UM/UIM policies are valid and enforceable under New Mexico law. *March v. Mountain States Mut. Cas. Co.*,

---

[2]The parties have not designated hearing transcripts or recordings for our review. Nevertheless, the parties agree that this appeal can and should be decided based on the written record.

1984-NMSC-092, ¶ 18, 101 N.M. 689, 687 P.2d 1040, *modified on other grounds by State Farm Mut. Ins. Co. v. Fennema*, 2005-NMSC-010, ¶ 6, 137 N.M. 275, 110 P.3d 491. Our courts have recognized that "the purpose of a consent-to-settle provision is to allow the insurer an opportunity to protect its subrogation interest." *Fennema*, 2005-NMSC-010, ¶ 9. "[I]f an insured, without the knowledge of his insurer, effectively releases a wrongdoer from liability, the insured destroys any right of subrogation the insurer may have against the wrongdoer." *Id.* ¶ 5. Under those circumstances, an insured may be precluded from recovering from his insurer. *See id.*

{18}   Our courts apply a two-step analysis to determine whether an insurance company may be relieved from paying UIM benefits based on the insured's alleged violation of a consent-to-settle provision. *Id.* ¶¶ 2 14. The first step is to examine whether the insured breached the consent-to-settle provision. *Id.* ¶¶ 7, 13; *see also Roberts Oil Co. v. Transamerica Ins. Co.*, 1992-NMSC-032, ¶ 22, 113 N.M. 745, 833 P.2d 222 (holding that "an insurer must demonstrate substantial prejudice as a result of a material breach of the insurance policy before to be relieved of its obligations under a policy" (internal quotation marks and citation omitted)). Once the insurer has established breach, the second step is to determine whether the insurer was substantially prejudiced by the settlement of the tort claim. *Fennema*, 2005-

9

NMSC-010, ¶¶ 5, 11, 13. Applying the *Fennema* analysis here, we conclude there are disputed issues of material fact as to the threshold question of breach.

{19}   This case stands in contrast to previous consent-to-settle cases in New Mexico because Thayer fully complied with his initial obligations under the policy's consent-to-settle provision: he provided notice to his insurer of the proposed settlement and requested the insurer's permission to accept the settlement. *Cf. Salas v. Mountain States Mut. Cas. Co.*, 2007-NMCA-161, ¶ 4, 143 N.M. 113, 173 P.3d 35 ("[W]ithout the knowledge of consent of [her insurer], [the p]laintiff settled the personal injury case and executed a [r]elease."), *aff'd*, 2009-NMSC-005, 145 N.M. 542, 202 P.3d 801; *see March*, 1984-NMSC-092, ¶ 2 (concluding that an insured's release and settlement with the tortfeasor, without the knowledge or consent of his insurance company, relieved the insurer of its obligations to the insured). Upon receiving notice of the proposed settlement, the policy required State Farm to exercise one of two options, either (1) consent to the settlement or (2) withhold consent and tender payment to Thayer in an amount equal to the settlement offer. It is undisputed that State Farm never notified Thayer in writing of its election, and Thayer accepted the settlement either eleven or seventeen months after first requesting permission to do so, depending on whether the fact-finder believes Thayer's first request for consent occurred over the telephone at the August 2012 mediation or by letter in March 2013.

10

{20}     State Farm maintains that Thayer's settlement with the tortfeasor necessarily amounts to a breach of the consent-to-settle provision. Thayer maintains that the insurer's conduct after receiving notice and a request for consent bears on the enforceability of the consent-to-settle provision. Thayer's essential position on appeal is that an insurer has a duty to respond reasonably promptly to an insured's request for consent to settle, and an insurer's failure to do so may waive its right to enforce the consent provision. Both propositions find support in New Mexico law and elsewhere.

{21}     In *Fennema*, our Supreme Court made clear that "[t]he insurer must act reasonably under the circumstances to investigate [the] claim and to evaluate whether to consent to a settlement between its insured and the tortfeasor." 2005-NMSC-010, ¶ 12. The Court observed that this requirement arises out of the insurer's statutory and common law duties of good faith. *Id.* In light of the insurer's "duty to make a timely and fair investigation," the Court assumed that the insurer's decision of whether to pursue subrogation would be made relatively quickly. *Id.*

{22}     Our Supreme Court has also recognized that an insurer can waive its right to enforce consent provisions through unreasonable delay. *See Stahmann v. Maryland Cas. Co.* 1940-NMSC-025, 44 N.M. 289, 101 P.2d 1021. In *Stahmann*, a worker's compensation insurance carrier failed to respond to an employer's request to pay an injured worker's medical expenses and benefits. *Id.* ¶ 3. The insurance policy

included a consent provision requiring the employer to seek the insurer's written consent before paying any indemnifiable compensation expenses. *Id.* ¶ 15. After the insurer failed to respond to two requests for indemnification, the employer paid the injured worker's medical expenses and benefits and promptly filed suit against the insurer. *Id.* ¶ 4.

{23} The trial court sustained the insurer's demurrer on the basis that payment was not made with the insurer's consent. *Id.* ¶ 17. On appeal, our Supreme Court noted that the consent provision gave control over the claim to the insurer, and because of this power imbalance, the insurer "should not be allowed, by inaction or indifference, to prejudice the rights of the insured." *Id.* ¶ 26. The Court held that the insurer had a duty to respond to the insured with "reasonable promptness," but had failed to do so, noting that the employer had not made payment until the carrier "had its opportunity to either settle or demand suit. [The insurer] stood by and refused to act." *Id.* ¶¶ 26-27. The Court concluded that under the circumstances, "the provisions in the policy contract prohibiting a settlement unless directed in writing should be considered waived, and the insurance company estopped to rely on the provisions to defeat a recovery by the insured upon the ground that the insured settled the claim without its authority." *Id.* ¶ 26.

{24} Although *Stahmann* has not been widely cited, New Mexico courts have indicated in more recent opinions that the same waiver principles may apply to

consent-to-settle provisions in UIM policies. *See Salas*, 2007-NMCA-161, ¶ 26 (stating that for waiver to apply to a settlement without consent, the insurer must "be on notice that it had a UIM subrogation claim that it needed to protect and then chose not to protect its right," but concluding the facts did not support waiver because the insurer did not know about the settlement negotiations before the plaintiff executed the release); *see also March*, 1984-NMSC-092, ¶ 15 (observing that "the insured is protected by the generally-accepted notion that an insurer's arbitrary and unreasonable withholding of consent would constitute a waiver of the consent requirement" but that "no such waiver was possible where the insured never even gave the insurer an opportunity to consent").

{25}    And since *Stahmann* was decided, our Legislature has codified an insurer's duty to "act reasonably promptly upon communications with respect to claims from insureds arising under policies," as well as to promptly investigate claims and effectuate reasonable settlements. *See* NMSA 1978, § 59A-16-20(B), (C), (E) (1997). Likewise, "[u]nder the common law, all insurance contracts include an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract." *Sherrill v. Farmers Ins. Exch.*, 2016-NMCA-056, ¶ 34, 374 P.3d 723 (internal quotation marks and citation omitted). In view of an insurer's statutory and common law duties, we believe the waiver rule articulated in *Stahmann* applies equally to consent-to-settle

13

provisions in the UIM context. *See* 1940-NMSC-025, ¶ 26 (reasoning that an insurer places the insured "at a disadvantage that it ought not be subjected to" when it fails to advise the insured of its decision with reasonable promptness). Consequently, we hold that if an insurer fails to notify the insured of its decision to either grant or withhold consent within a reasonable amount of time after receiving an insured's request for consent to settle, the insurer may waive the consent requirement and may not rely on the consent-to-settle provision as a basis to deny coverage.

{26} Our holding aligns with a number of other jurisdictions that have concluded consent to settle provisions can be waived through inaction. *See Fisher v. USAA Cas. Ins. Co.*, 973 F.2d 1103, 1107 (3d Cir. 1992) (applying Pennsylvania law and holding that an insurer may not unduly delay a coverage decision arising from a request for consent to settle); *Taylor v. Gov't Emps. Ins. Co.*, 978 P.2d 740, 749 (Haw. 1999) ("If the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier may not deny UIM benefits to its insured." (emphasis, internal quotation marks, and citation omitted)); *Tate v. Secura Ins.*, 587 N.E.2d 665, 672 (Ind. 1992) (holding that an insurer's delay in providing consent to settle created issues of waiver and estoppel); *Ferrando v. Auto-Owner's Mut. Ins. Co.*, 2002-Ohio-7217, ¶ 91, 781 N.E.2d 927 ("[If] the insurer failed to respond within a reasonable time to a request for consent to the settlement offer . . . the release will not preclude

14

recovery under the UIM policy."); *Fulmer v. Insura Prop. & Cas. Co.*, 760 N.E.2d 392, 399 (Ohio 2002) ("[W]e hold that when an insured has given her underinsurance carrier notice of a tentative settlement prior to release, and the insurer has had a reasonable opportunity to protect its subrogation rights by paying its insured the amount of the settlement offer but does not do so, the release will not preclude recovery of underinsurance benefits."); *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819-20 (Tenn. 2003) (holding that an insurer's delay in responding to a request for consent to settle created issues of material fact as to whether the insurer waived the provision); *see also* 14 Plitt, et al., *Couch on Ins.* § 124.12, *Westlaw* (database updated June 2023) ("An insured is not precluded from recovering uninsured/underinsured (UM/UIM) benefits as a consequence of entering into a nonconsensual settlement if the insurer has, through its actions, waived its right to rely on a 'consent to settle' clause. An insurer may waive its right to rely on the clause if . . . it does not notify the insured of its decision to either grant or withhold consent within a reasonable amount of time." (citations omitted)).

{27} Returning to the case at hand, there are genuine issues of fact as to whether Thayer breached the consent-to-settle provision as a result of his settlement with the tortfeasor. Thayer presented evidence that could allow a jury to infer that State Farm had a reasonable opportunity to respond to Thayer's request for consent to settle but

failed to do so, and thereby waived its right to rely on the consent-to-settle provision of the contract.

{28} For example, the record demonstrates a genuine issue of fact as to when State Farm was first put on notice of Thayer's request for consent to settle. Thayer produced evidence in response to State Farm's motion for summary judgment showing that he first requested consent to accept Granite State's settlement offer by phone at the August 2012 mediation. State Farm disputes this, asserting that it has no record of that phone call and instead received notice for the first time upon receiving Thayer's March 2013 letter. This factual dispute is material to the issue of waiver because its resolution by a fact-finder establishes the starting point for evaluating State Farm's response. Thayer asserts that if the period of delay is measured from his phone call to State Farm during the mediation, State Farm did not respond in any fashion for over seven months, and "a reasonable trier of fact could find that State Farm failed to comply with its obligations to respond within a reasonable time to Thayer's request for consent to settle." *See Fennema*, 2005-NMSC-010, ¶ 12 (stating that the insurer has a duty to timely investigate upon receiving an insured's request for consent to settle). State Farm maintains that its first notice of the claim occurred in March 2013 when it received Thayer's letter, and that it responded promptly by calling and sending a series of three letters to Thayer.

16

{29}     In addition to disputing the amount of time at issue, the parties also offer competing interpretations of the nature and effect of State Farm's letters to Thayer. Thayer states that after writing to State Farm in March 2013, he "continued to wait for State Farm to provide an explanation and consent for him to settle with the tortfeasor," but that State Farm never expressly granted or denied consent. State Farm states that it was entitled to investigate Thayer's claim in order to evaluate whether to consent to the settlement. *See id.* State Farm asserts that it made multiple attempts to contact Thayer in order to obtain more information so that it could evaluate the proposed settlement, and because Thayer never responded, State Farm was "prevented . . . from exercising its right to protect its subrogation interests." We observe, however, that State Farm's letters never expressly asked Thayer to provide any particular information to State Farm, instead stating its general need for certain specific and nonspecific information, and it was not until June 2013—three months after receiving Thayer's written request for consent to settle—that State Farm clearly requested contact from Thayer within thirty days. The record is silent as to what information, if any, State Farm needed from Thayer in order to evaluate his request for consent to settle. Put differently, State Farm has not established that there was information necessary to its investigation that it was unable to obtain without Thayer's assistance. On the record before us, State Farm's investigation consisted of one phone call and three letters to Thayer's attorney (two of which were reservation

of rights letters), and an asset investigation conducted approximately one year after receiving Thayer's March 2013 letter. Whether these facts demonstrate that State Farm acted reasonably under the circumstances to investigate Thayer's claim and evaluate whether to consent to the settlement, or whether they demonstrate that State Farm failed to comply with its obligations to investigate and respond to Thayer's request for consent to settle within a reasonable time, are disputed factual issues that must be decided by the fact-finder.

{30}    The resolution of these factual issues bears on whether State Farm is entitled to enforce the consent provision as a basis to deny UIM coverage. Because there are factual disputes about whether State Farm waived the policy provision requiring consent to settle, we hold that State Farm was not entitled to judgment as a matter of law.

**CONCLUSION**

{31}    For the foregoing reasons, the summary judgment for State Farm is reversed, and the case is remanded for further proceedings consistent with this opinion.

{32}    **IT IS SO ORDERED.**

_____
**MEGAN P. DUFFY, Judge**

18

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**


_____
**ZACHARY A. IVES, Judge**