**57 P.(2d) 283**

### RUMLEY v. MIDDLE RIO GRANDE CONSERVANCY DIST.

#### No. 4145.

Supreme Court of New Mexico.

April 17, 1936.

Pearce C. Rodey, Don L. Dickason, and Benjamin Osuna, all of Albuquerque, for appellant.

Joseph Gill, of Albuquerque, for appellee.

SADLER, Chief Justice.

The plaintiff (appellee) as claimant before the district court of Bernalillo county sought recovery under the Workmen's Compensation Act (Comp.St.1929, § 156-101 et seq.). She is the widow of Miles W. Rumley, deceased, who at the time of his death and on the occasion of the alleged accidental injury which it is said resulted in his death, was employed by the Middle Rio Grande Conservancy District, the defendant, as levee patrolman or "ditch rider" on what is known as the Corrales Main Canal, a part of the works of the defendant conservancy district.

The deceased had been employed in the capacity indicated from the month of April, 1934, down to the date of the alleged accidental injury on August 19, 1934. His duties were to patrol the canal, turn water in and shut it off by lifting and closing gates, detect leaks or breaks in the ditch banks, see to the repair of same, keep the portion of the ditch patrolled by him clear of obstructions and, of course, do any other thing necessary to accomplish the main object of his employment,

viz., to assure a ditch capable of furnishing a steady and measured flow of water when required.

On the date in question, August 19, 1934, the deceased, while on regular patrol duty, accompanied by his wife, found it necessary to open a gate in a ditch near Alameda bridge in Corrales. Evidently the gate was fast, since deceased used a "two-by-four" or post for leverage in getting it loose enough to lift and open. There was a head of water against the gate at the time. His wife, who witnessed his labors with the gate, testified:

"A. He had to use the two by four on it, first from one side then the other, then he used all of his strength he possibly had to remove that gate.

"Q. How many times did he lift on it? A. He stayed with it until he just pulled it up; he was in this position pulling on the gate and when he released the gate he stepped back on the bank then of the ditch.

"Q. What did he do or say at that moment? A. When he stepped back on the bank he was real pale and he said, 'Mama, I hurt myself.'

"Q. Did he put his hand up to his breast? A. He did."

The plaintiff (deceased's wife), took him home in the automobile in which they were traveling and he went to bed. However, he worked the next two days. The third day he was again confined to his bed and was unable thereafter to return to his work. He died on September 3, 1934, only two weeks from the date of the alleged accidental injury.

The deceased had suffered from heart trouble for several months prior to his death. On July 8, 1934, he suffered a heart attack which confined him to his bed for the period of ten days, and his physician, testifying as a witness for plaintiff, said that upon releasing him he "absolutely advised him that he should make no effort physically of any kind." The physician gave as his diagnosis of the case at that time "hypertrophy of the heart, mitral regurgitation and auricular fibrillation." Asked to state this condition so that counsel could understand it, he elucidated: "Quite enlarged heart with a thickened heart muscle and a leaking valve of the left side of the heart, with a falter or an irregular beat of the heart, which ordinarily is not there in a normal heart; in other words, a very decided heart condition."

This witness, signing deceased's death certificate, gave as cause of death the following, to wit: "Acute dilatation heart —auricular fibrillation. Date of onset—1934," and as contributory cause of importance not related to principal causes, "mitral regurg. 1933." There were no marks of external violence of any kind on the body of deceased following his exertion in lifting the gate.

At the time of the alleged accidental injury the deceased was working solely in operation and maintenance work and not in construction work for the defendant, Middle Rio Grande Conservancy District.

The defendant, as the trial court found, had completed its construction work in the Corrales area several months prior to August 19, 1934, "and was solely carrying on operation and maintenance work in the area in question."

The trial court found that the exertion of deceased in lifting the gate had aggravated his pre-existing heart trouble and accelerated death; that he died of acute dilatation of the heart as a result of overstrain in lifting said gate; concluded that this constituted injury "by accident" within the meaning of the Compensation Act; overruled defendant's objection that deceased was not engaged in an extrahazardous occupation within the meaning of that term as used in the act, and awarded judgment in plaintiff's favor. It is to review that judgment that this appeal is prosecuted.

While three points are relied upon for reversal, the second one being decisive of the case, the other two do not require notice. It is not amiss, however, even though we do not decide the point, to express our serious doubt as to soundness of the first point. The defendant invokes against plaintiff the provisions of Comp.St.1929 § 45-601, requiring corroboration of opposite or interested parties in suits by or against the heirs of deceased persons in respect of any matter occurring before the death of such deceased persons. The plaintiff acquiesces in the view that this statute is applicable and endeavors to avoid its effect by attempting to show corroboration of plaintiff's account of the event claimed to have been accidental.

We doubt applicability of the statute. Where a death occurs for which compensation is recoverable, dependency as defined in the act, and not heirship, furnishes the sole test of claimant's right to recover in so far as governed by status. The mere fact that the two usually coexist in the same person, or persons, does not alter the fact that it is the former status alone which will sustain recovery. Heirship without defined dependency will not authorize compensation, whereas dependency without heirship in certain instances will do so. Comp.St.1929 § 156-112, subparagraphs (j) and (k). Under defendant's theory the statute would be applicable where heirship and dependency coexist in claimant and inapplicable where they do not. Strong reasons only could support a result so anomalous. Hence, our doubt.

The defendant's second point, which we have indicated is decisive, involves an answer to the question: Was the decedent, Miles W. Rumley, on the occasion of the alleged injury, working for an employer then and there engaged in carrying on any of the extrahazardous occupations or pursuits defined in the statute? We give a negative answer to this inquiry.

The language of Comp.St.1929, § 156-102, so far as material, reads: "The state and each county, city, town, school district, drainage, irrigation or conservancy district, and public institution and admin-

istrative board thereof employing as many as four workmen *in any of the extra-hazardous occupations or pursuits hereinafter named or described,* and every private person, firm, or corporation engaged in *carrying on for the purpose of business, trade or gain* within this state, *either or any of the extra-hazardous occupations or pursuits herein named or described* and intended to be affected hereby, shall employ therein as many as four workmen, except as hereinafter provided, such employer shall become liable to, and shall pay to any such workman injured by accident arising out of and in the course of his employment in any such occupation and pursuit, and, in case of his death being occasioned thereby, to such person as may be appointed by the court to receive the same for the benefit of his dependents, compensation in the manner and amount, and at the times herein required." (Italics ours.)

We are referred by this section to another, Comp.St.1929, § 156-110, for ascertaining when the employer is to be considered as carrying on an extrahazardous occupation or pursuit. So far as material, it reads: "The extra-hazardous occupations and pursuits to which this act are applicable are as follows: Factories, mills and workshops where machinery is used; foundries, blast furnaces, mines, oil wells, gas works, natural gas plants, water works, reduction works, breweries, elevators, dredges, smelters, power works, laundries operated by power, quarries, engineering works, logging, road building and construction, lumbering and saw mill operations, street railways, buildings being constructed, repaired, moved, or demolished; telephone, telegraph, electric light or power plants or lines, steam heating or power plants; bridge building, railroad construction work, but shall not include railroad construction work of any character when done by the owner or operator of any railroad; and all employment wherein a process requiring the use of any dangerous explosive or inflammable materials is carried on; and each of which employments above named, including all employees of telephone and telegraph companies, is hereby determined to be extrahazardous, in which, from the nature, conditions or means of prosecution of the work therein required risks to the life and limb of the workman engaged therein are inherent, necessary or substantially unavoidable."

The plaintiff, by attempting to classify the occupation or pursuit in which deceased's employer was engaged at the time in question as "engineering works" and no other, concedes, and we think advisedly, that the employer does not classify under any other occupation or pursuit named in the statute as extrahazardous. The phrase "engineering works" is defined in section 156-112(g) as follows: " 'Engineering work' means any work in the construction, alteration, extension, repair or demolition of a bridge, jetty, dike, dam, reservoir, underground conduit, sewer, oil or gas well, oil tank, gas tank, water tank or tower, any caisson work or work in artificially compressed air, any work in dredging,

work on log or lumber rafts or booms, pile driving, moving safes, or in laying, repairing or removing underground pipes and connections, the erection, installing, repairing, or removing of boilers, furnaces, engines and power machinery (including belting and other connections) and any work in grading or excavating where shoring is necessary or power machinery or blasting powder, dynamite or other high explosives are in use."

We think this case falls squarely within the authority of Koger v. A. T. Woods, Inc., 38 N.M. 241, 31 P.(2d) 255. In that case the employer was engaged in the general business of farming. Incident to its farming operations, it used two gasoline engines to supply power for pumping water from wells for irrigation purposes. The injured workman spent about two hours each day in caring for and operating the engines. When not so engaged, he acted as "straw boss" of the other employees in farm work, and on occasion operated a tractor. Affirming the judgment of the lower court denying recovery, we said:

"Appellant contends that his employment came within the classification of extrahazardous occupations and pursuits as either 'power works' or 'engineering works.' In a very able brief, counsel for appellant attempts to prove that, at the time the appellant was injured, he was operating engines to produce 'power' to pump water from the wells to be used for irrigation purposes. With this theory we cannot agree.

"The operation of the two engines was merely incidental to the main pursuit, which was farming. Appellant was not merely engaged in caring for the engines as a separate and distinct employment, but as a part and parcel of the entire agricultural enterprise, in which he also participated as a straw boss and tractor operator.

"Our statute does not expressly exclude persons engaged in 'agricultural pursuits' as is done in many acts of other states. The statute in effect at the time of the accident, Comp.St.1929, § 156-110, specifically enumerates what constitute extrahazardous occupations and pursuits, and farming or agriculture, either 'dry' or 'irrigation,' are not among those enumerated.

"Expressio unius est exclusio alterius applies to a case like this. It is clear from the context that 'agricultural pursuits' are not included in the classification of 'extrahazardous occupations.'"

As emphasizing the fact that it is not the nature of the particular work in which the employee is engaged at the time of his injury but rather the character of his employer's occupation which controls, we further said: "It may seem a harsh rule that, if the appellant had been injured while working on the same piece of machinery but employed in pumping water at a waterworks plant or in a dredging operation, he would be entitled to compensation; whereas being engaged in a farming or agricultural pursuit he is not entitled to compensation. That is a matter of legis-

lative policy, and we are bound to interpret and apply the law as it is given us."

In State ex rel. Maryland Casualty Company v. State Highway Commission, 38 N.M. 482, 35 P.(2d) 308, 311, contrasting the meaning of "extra hazardous occupations" as used in Laws 1927, c. 100, an act authorizing the highway department to insure certain of its employees, and "extra hazardous occupations and pursuits," as found in Laws 1917, c. 83, our original Workmen's Compensation Law, we said:

"Finally, appellee's contention is based on a false conception. It is demonstrably untrue that 'extra hazardous occupations' in the 1927 act means the same thing as 'extra-hazardous occupations and pursuits' in the 1917 act. All agree that the former has reference to the particular duty or task of the employee. The latter as plainly refers to the business or undertaking of the employer.

"By the 1927 statute the highway commission, which may here be considered as an administrative arm of the state engaged in the business or undertaking of road building, is authorized to take out insurance for such of its employees as it deems engaged in extra hazardous duties or tasks.

"By the 1917 act persons and corporations (employers) engaged in certain named 'extra-hazardous occupations or pursuits' are made liable to compensate their employees for injuries and to give security therefor."

■ As plainly appears from what is there said, it is the business or undertaking of the employer, not the particular duty or task of the employee at the time, which furnishes the test on whether the act is applicable. Nor can it be said the plaintiff fails to comprehend this as the true construction. On the contrary, she vigorously insists that defendant was engaged in carrying on "engineering works" at the time and place in question; that although its construction program had been completed in this area some months previously, and it was engaged solely in "operation and maintenance," all as found by the court, nevertheless, the deceased, in the performance of his duties as patrolman or "ditch rider," must, if occasion arose, repair a "dike," and that the business of the employer in the construction of the project "merged into its maintenance without any line of demarcation."

With this reasoning we cannot agree The only thing to which plaintiff points in the definition of "engineering works" as embracing work the deceased might be called upon to do in the performance of his duties as "ditch rider" or patrolman, is the "repair * * * of a dike." Actually, he was not repairing a dike at the time of the alleged injury, but this fact is of no consequence. The important consideration is that the repair of a dike, if some break should necessitate repair, was but an incident to the principal business or undertaking, viz., "operation and maintenance" of an irrigation project, in which deceased's employer was engaged at the

time and place in question. Koger v. A. T. Woods, Inc., supra.

■ The plaintiff does not contend that the mere fact that defendant is a "conservancy district" within the meaning of that term as used in Comp. St. 1929, § 156-102, subjects it to the act. It is only when employers are engaged in "occupations or pursuits" declared "extra hazardous" by section 156-110 that liability attaches under the act for compensable injuries to employees. Nor does it matter that this employer at one time in the same area was, or perhaps at the same time elsewhere may have been, engaged in extrahazardous pursuits as defined in the act. An employer may conduct different departments or types of business, some of which are within the Compensation Act and some of which are not. 71 C.J. 365, § 78, under subject, "Workmen's Compensation Acts." Furthermore, and contrary to plaintiff's contention, the environment of employer's occupation during construction and that obtaining in operation and maintenance, as related to hazards of employment, is so different as to suggest a clear line of demarcation. That line is where the one begins and the other ends.

■ Liberal interpretation, to which this court is committed in favor of an employee fairly within the protection of the act (Gonzales v. Chino Copper Company, 29 N.M. 228, 222 P. 903), does not warrant an unreasonable or a strained construction in order to embrace occupations or pursuits not classified by the Legislature as extrahazardous. H. Roy Berry Co. v. Industrial Commission, 318 Ill. 312, 149 N.E. 278; Mobley v. Brown, 151 Okl. 167, 2 P.(2d) 1034, 83 A.L.R. 1014, and annotation at 1018; Anderson v. Department of Labor and Industries, 173 Wash. 483, 23 P.(2d) 879. Any demand to extend benefits of the act to employees of conservancy and irrigation districts where the latter are engaged only in operation and maintenance of such projects must be accomplished through the Legislature. The courts are powerless to effect it.

The judgment will be reversed, and the cause remanded, with a direction to the trial court to set aside its judgment heretofore rendered and dismiss the complaint.

It is so ordered.

HUDSPETH, BICKLEY, BRICE, and ZINN, JJ., concur.