Nakamura, J. (dissenting). {54} Since 1917, when the Workers’ Compensation Act (WCA), NMSA 1978, §§ 52-1-1 to -70 (1917, as amended through 2015), was originally enacted, the Legislature has allowed employers of farm and ranch laborers to decide for themselves whether to participate in the workers’ compensation scheme. See NMSA 1978, § 52-l-6(A)-(B) (1990); Laws 1917, ch. 83 §§ 2, 10. For nearly 100 years, the Legislature has maintained its view that the best policy for New Mexico is that each farm and ranch employing more than three workers decides for itself whether to incur the costs of workers’ compensation or to face the costs of potential tort liability. To that end, Section 52-l-6(A) excludes employers of farm and ranch laborers from the Legislature’s requirement subjecting employers of three or more workers to the provisions of the WCA. {55} Today, the majority opinion exercises this Court’s power of judicial review and holds that this 99-year-old statutory scheme violates the New Mexico Constitution. By invalidating Section 52-l-6(A)’s exclusion of farms and ranches from mandatory participation in the state workers’ compensation scheme, the majority opinion has supplanted the Legislature’s view of what, all things considered, is best for New Mexico. But this Court has neither the necessary facts nor the institutional mission to substitute our judgment for that of the Legislature regarding what is best for any particular industry within the State’s economy. {56} The farm-and-ranch exclusion may be perceived as unfair, unwise, or improvident in its treatment of laborers who work for farms and ranches electing exemption from the WCA, but this Court may exercise its greatest power to invalidate a statute only if the statute contravenes the federal Constitution or the New Mexico Constitution. This case raises no federal claim, and, under well-established law, the Legislature’s decision to allow employers of farm and ranch laborers to decide for themselves whether to be subject to the WCA or to face tort liability does not violate any right guaranteed by the New Mexico Constitution. Because Section 52-1-6 is socioeconomic legislation, the Worker-Respondents have a right against the disparate treatment allowed by this statute only if the statute does not rationally further a legitimate legislative purpose. The Worker-Respondents simply cannot make that showing. By enacting Section 52-1-6, the Legislature designed a statutory scheme that rationally controls costs for New Mexico farms and ranches. The statute creates a choice which allows these employers to elect the option that entails the lowest expected costs, and 29% of New Mexico farms and ranches (including many of the largest agricultural firms in the State) have elected to provide workers’ compensation. This statute survives an equal protection challenge. Additionally, by nullifying the Legislature’s statutory scheme, the majority opinion threatens to detrimentally impact small, economically fragile farms in New Mexico. Therefore, I respectfully dissent. I. SECTION 5 2 -1 - 6 ( A ) IS CONSTITUTIONAL {57} This is not a complex case. Noe Rodriguez and Maria Aguirre were injured on the job. Rodriguez and Aguirre were employed by a ranch and a farm, respectively, that had elected not to provide workers’ compensation benefits and which, under Section 52-1-6(A), were not required to do so. Rodriguez and Aguirre claim that the Legislature’s exclusion of employers of farm and ranch laborers from mandatory participation in the workers’ compensation scheme violates their rights to equal protection under Article II, Section 18 of the New Mexico Constitution. {58} Equal protection doctrine requires that Rodriguez and Aguirre “first prove that they are similarly situated to another group but are treated dissimilarly.” Breen v. Carlsbad Mun. Sch., 2005-NMSC-028, ¶ 8, 138 N.M. 331, 120 P.3d 413. That showing is easily met. Rodriguez and Aguirre are similar to all other workers in New Mexico who suffer work-related injuries and are in need of benefits. But Aguirre’s and Rodriguez’s employers elected exemption from the W CA, and, therefore, Aguirre and Rodriguez are treated dissimilarly from other workers whose employers participate in the workers’ compensation scheme. Whereas injured workers in the latter group receive workers’ compensation benefits, injured workers in the former group do not, even though they may seek other forms of recovery such as damages in tort. Thus, Section 52-1-6(A) results in dissimilar treatment of workers injured on the job. {59} Upon a showing of dissimilar treatment, this Court determines what level of scrutiny applies to the challenged legislation. Breen, 2005-NMSC-028, ¶ 8. Section 52-1-6(A) is economic legislation that does not subject a suspect or sensitive class to different treatment, and, therefore, rational basis review applies. See Griego v. Oliver, 2014-NMSC-003, ¶ 39, 316 P.3d 865; Wagner v. AGW Consultants, 2005-NMSC-016, ¶ 12, 137 N.M. 734, 114 P.3d 1050 (“Ordinarily we defer to the Legislature’s judgment in enacting social and economic legislation such as the WCA.”). Rational basis review is the most deferential standard that a court applies when reviewing the constitutionality of legislation, “and the burden is on the party challenging the legislation to prove that it ‘is not rationally related to a legitimate governmental] purpose.’” Breen, 2005-NMSC-028, ¶ 11 (alteration in original) (quoting Wagner, 2005-NMSC-016, ¶¶ 12, 24). Under rational basis review, our task is to decide, first, whether the Legislature enacted a statute to further a permissible legislative purpose and, second, whether the challenged statutory provision is rationally related to thatpurpose. Kane v. City of Albuquerque, 2015-NMSC-027, ¶¶ 17-22, 358 P.3d 249. {60} In considering the Legislature’s purpose when enacting and maintaining Section 52-l-6(A)’s farm-and-ranch exclusion, the record evidence and legislative history indicate that the Legislature was motivated to contain regulatory costs incurred by economically precarious farms and ranches in New Mexico. For instance, in 2009, the Legislature considered bills that would have removed the WCA’s exclusion for employers of farm and ranch laborers. See H.B. 62, 49th Leg., Reg. Sess. (N.M. 2009); S.B. 9, 49th Leg., Reg. Sess. (N.M. 2009). In considering these bills, the Legislature had available the Fiscal Impact Report (FIR) for House Bill 62. Members of the House Business and Industry Committee relied on the FIR in rejecting House Bill 62 by a vote of 10-2. {61} According to the FIR for House Bill 62, the “N.M. Department of Agriculture stated the proposed legislation would introduce a significant financial strain on the farming and ranching part of the industry.” FIR for H.B. 62, at 3 (Feb. 05, 2009) (2009 FIR). The FIR also included cost projections to farm and ranch employers submitted by the Workers’ Compensation Administration, the National Council of Compensation Insurance (NCCI), and New Mexico State University agricultural economists. See id. The Workers’ Compensation Administration had projected the annual cost of the bill “to farm and ranch employers to be an additional $ 10.5 million annually. . . [which] represents a cost increase of approximately 1.5 percent.” Id. The NCCI had similarly estimated that House Bill 62 “would increase New Mexico payroll costs by 0.4 percent and increase premiums up to 1.1 percent.” Id. The FIR additionally indicated that, according to Workers’ Compensation Administration data, the average cost per claim was approximately $16,876. Id. In contrast, the FIR reported that the average net income per farm in the 2002 census of agriculture was $ 19,373 — only slightly more than the average cost per workers’ compensation claim. Id. Indeed, in 2012, the average net cash income from farming operations in New Mexico was only $9,501. See United States Department of Agriculture, National Agricultural Statistics Service, 2015 State Agricultural Overview New Mexico, http://tinyurl.com/jjpx7ch (last viewed June 28,2016). Therefore, legislative facts demonstrate a legislative concern to maintain Section 52-1-6(A) in order to contain costs incurred by fiscally vulnerable farms and ranches. See Oh'ver,2014-NMSC-003^47 n. 7 (“[Tjhis Court. . . may take judicial notice of legislative facts by resorting to whatever materials it may have at its disposal establishing or tending to establish those facts.” (alteration in original) (internal quotation marks and citation omitted)). {62} Under rational basis review, the Legislature’s purpose to safeguard farms and ranches in New Mexico from the imposition of additional overhead costs is permissible. There can be no dispute that the Legislature may pursue the legitimate purpose to protect certain industries from additional costs or to lower overhead costs. See, e.g., Garcia v. La Farge, 1995-NMSC-019, ¶ 24, 119 N.M. 532, 893 P.2d 428 (finding under rational basis review that lowering the costs of malpractice insurance for health care providers was a legitimate legislative purpose); Schirmer v. Homestake Min. Co., 1994-NMSC-095, ¶ 8, 118 N.M. 420, 882 P.2d 11 (“[T]he legislative goal of maintaining reasonable costs to employers is a legitimate legislative goal . . . .”); Marrujo v. N.M. State Highway Transp. Dep't, 1994-NMSC-116, ¶ 23, 118 N.M. 753, 887 P.2d 747 (finding under rational basis review that the reduction of costs to local governments is a valid legislative goal); Terry v. N.M. State Highway Comm’n, 1982-NMSC-047, ¶ 8, 98 N.M. 119, 645 P.2d 1377 (citing Howell v. Burk, 1977-NMCA-077, ¶ 8, 90 N.M. 688, 568 P.2d 214 (upholding a statute as rationally related to the permissible legislative goal of guarding against the imposition of costs on firms in the construction industry)). The majority opinion does not suggest otherwise. {63} The only remaining question, then, is whether Section 52-1 -6(A) is rationally related to the legitimate purpose of insulating New Mexico farms and ranches from additional costs. It is. Section 52-l-6(A), in conjunction with Subsection (B), creates an architecture by which employers in the agricultural industry choose which costs they incur. There are costs involved with being subject to the WCA. Those costs include insurance premiums and fees collected pursuant to NMSA 1978, § 52-5-19 (2004). Yet, despite these costs, there are good reasons why a farm or ranch would voluntarily elect to be subject to the WCA, as permitted by Section 52-l-6(B). The WCA provides a predictable schedule of benefits and makes those benefits the exclusive remedy for an injured worker. As the record in this case reflects, “[tjhere is a benefit to having insurance in place to take care of the injured worker and it might be an incentive to get a higher quality worker if they are aware of the benefits. Employers are no longer exposed to possible tort lawsuits.” Griego v. N.M. Workers' Comp. Admin., No. CV 2009-10130, 20, ¶ 141 (N.M. 2nd Jud. D., Oct. 17, 2011) (final pretrial order).[4] Likewise, there are risks associated with a farm or ranch’s decision to forego WCA participation: such employers risk the possibility of unpredictable tort judgments and other costs associated with employee injury. {64} In other words, Subsections (A) and (B) allocate to each farm and ranch the choice whether to pay the costs of being subject to the WCA or to face potential tort liability. The Legislature’s allocation of this choice to each farm and ranch is rationally related to its goal to contain the costs for the farming and ranching industry because each farm and ranch is in the best position to know whether it would be more cost-effective to participate in the workers’ compensation scheme or to incur the risk of tort liability and associated litigation costs. New Mexico farms and ranches that employ more than three employees vary greatly in the number of employees hired, the positions hired for, other fixed and marginal costs, products produced, annual sales, and profitability. See, e.g., United States Department of Agriculture, National Agricultural Statistics Service, 2015 State Agricultural Overview New Mexico, http://tinyurl.com/jjpx7ch (last viewed June 28, 2016); see also 2014 New Mexico Agricultural Statistics Bulletin, 18, http://tinyurl.com/zahewua (last viewed June 28, 2016). Because of that variety, it is far from arbitrary for the Legislature to allow each farm and ranch to decide for itself whether to pay the costs of the W CA or to risk tort liability. Each farm and ranch will very likely elect the option that entails the lowest expected costs, thereby furthering the Legislature’s legitimate goal to support New Mexico’s economically precarious farms and ranches. {65} In fact, the record demonstrates that 29% of farms and ranches that employ more than three workers have voluntarily elected to be subject to the WCA. This Court heard at oral argument that, of the farms and ranches who have elected to participate in the WCA, the majority are the largest agribusinesses who hire the largest number and largest variety of workers. It comes as no surprise that larger firms in New Mexico’s farming and ranching industry have decided that it is best for their businesses to be subject to the WCA. By doing so, these businesses fix costs and eliminate exposure to unpredictable tort liability. Conversely, the smaller farms and ranches have decided that, given their smaller economies of scale and smaller profit margins, it is best for their businesses to avoid the costs (and forgo the benefits) of the WC A and to risk tort liability instead. So, while the majority opinion may purport to correct a power disparity between workers and the largest firms in the agricultural industry, its decision will likely have the effect of raising costs for the most economically precarious, smaller New Mexico farms and ranches. By protecting against such circumstance, Section 52-1 -6(A) rationally furthers the legitimate legislative purpose. II. THE MAJORITY OPINION ERRS IN CONCLUDING THAT SECTION 52-1-6(A) IS UNCONSTITUTIONAL {66} The majority opinion asserts that it “remain[s] highly deferential to the Legislature by presitming the constitutionality of social and economic legislation.” Maj. Op. ¶ 27. But it is difficult to see how. Instead of interpreting Section 52-1-6 according to its plain language and then employing the traditional doctrine of rational basis review, the majority opinion does something quite different. First, the majority opinion misinterprets Section 52-1-6 to create a distinction that the Legislature neither drew nor intended. Maj. Op. ¶¶ 15-20. The majority opinion then misapplies rational basis scrutiny to hold Section 52-l-6(A) unconstitutional and relies on inapposite case law to support that holding. Maj. Op. ¶¶ 28-3 3. Such analysis is neither deferential to the Legislature nor willing to presume the constitutionality of social and economic legislation. And the majority opinion departs from the reasoning and the traditional equal protection analysis employed by myriad other state appellate courts and the United States Supreme Court to uphold analogous farm-and-ranch exceptions to mandatory workers’ compensation statutes against identical state and federal constitutional challenges.[5] A. The majority opinion misinterprets Section 52-1-6 in concluding that the statute is unconstitutional {67} This Court may not interpret a statute in ways that render it constitutionally infirm. See, e.g., State v. Flores, 2004-NMSC-021, ¶ 16, 135 N.M. 759, 93 P.3d 1264 (“When construing a statute we are to construe it, if possible, so that it will be constitutional.” (internal quotation marks and citation omitted)); accord Huey v. Lente, 1973-NMSC-098, ¶ 6, 85 N.M. 597, 514 P.2d 1093 (“[I]f a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality.”). Yet, that is what the majority opinion has done. {68} According to the majority opinion, Section 52-1-6(A) draws a line between, on the one hand, “farm and ranch laborers,” and, on the other hand, all other employees of farms and ranches. Maj. Op. ¶¶ 15-20. Not every employee of a farm or ranch is a “farm and ranch laborer.” Some larger farms and ranches also hire, for example, staffwho work primarily in the packaging of crops, sales, and administration. The majority opinion interprets Section 52-1-6(A) to allow farms and ranches to exclude “farm and ranch laborers” from workers’ compensation, but not other employees, such as administrative or sales staff. Maj. Op. ¶¶ 15-20. The majority opinion concludes that distinction is irrational and, therefore, holds that Section 52-1-6(A) violates the New Mexico Constitution. Maj. Op. ¶¶ 28-33. {69} Irrespective of whether it would be irrational for the Legislature to allow farms and ranches to exclude “farm and ranch laborers” from workers’ compensation while not permitting farms and ranches to exclude other employees, this is not a distinction that the Legislature drew. The distinction that the majority opinion focuses on is simply not in the statute. “The text of a statute or rule is the primary, essential source of its meaning.” NMSA 1978, § 12-2A-19 (1997). And the text of Section 52-l-6(A) does not remotely suggest that the Legislature intended to permit farms and ranches to exclude laborers who primarily work with the crops and livestock, but not other employees. {70} Rather, Section 52-l-6(A) indicates that the Legislature permits farms and ranches to exclude themselves from mandatory participation in the workers’ compensation scheme. The statute unambiguously provides an exemption for employers, not certain subsets of their employees. Section 52-1-6 plainly states that “[t]he provision of the [WCA] . . . shall not apply to employers of... farm and ranch laborers.” § 52-1-6(A). The statute also says “employers of. . . farm and ranch laborers” can make “[a]n election to be subject to the [WCA].” § 52-l-6(B). Accordingly, the statute’s exclusion from mandatory participation in the workers’ compensation scheme applies to employers, and the choice to participate also resides with employers. See § 52-l-6(A)-(B). {71} Instead of following the plain text of the statute, the majority opinion adopts an erroneous reading offered by the Court of Appeals in Cueto v. Stahmann Farms, Inc., 1980-NMCA-036, 94 N.M. 223, 608 P.2d 535, and Holguin v. Billy the Kid Produce, Inc., 1990-NMCA-073, 100 N.M. 287, 795 P.2d 92. See Maj. Op. ¶¶ 15-18. Cueto and Holguin read Section 52-1 - 6(A)’s exclusion to turn, not on the business of the employer, but rather on the primary job duties of the employee. See Holguin, 1990-NMCA-073, ¶ 19; Cueto, 1980-NMCA-036, ¶ 6. The majority opinion reasons that Section 52-l-6(A) must mean something other than what it says because a ‘“literal interpretation”’ of the statute would lead to “‘absurd results.’” Maj. Op. ¶ 15 (quoting Cueto, 1980-NMCA-036, ¶ 6). According to the majority opinion, a literal reading of the text would allow any employer — despite the industry in which it operates — to exclude its entire workforce from workers’ compensation coverage simply by hiring a couple of farm or ranch laborers. Maj. Op. ¶ 15. Imagine, for example, a semiconductor chip manufacturing facility planting an adjacent pecan orchard. No court in New Mexico could reasonably interpret Section 52-1 - 6(A) to provide that such a factory could exclude itself from the provisions of the WCA. But a court need not interpret the statute as the majority opinion does in order to deny the hypothetical factory the benefit of the farm-and-ranch exclusion. {72} Contrary to the majority opinion’s suggestion, its interpretation of Section 52-1-6(A) is not the only interpretation that avoids the absurd result. Section 52-1-6(A) should be read not as allowing the exclusion of only farm and ranch laborers from the mandatory provisions of the WCA, but rather as allowing the exclusion of employers whose workforce is mainly comprised of farm and ranch laborers. In other words, if an employer mainly employs farm and ranch laborers (i.e., if an employer is a farm or a ranch), then under Subsections (A) and (B), that employer is not required to participate in the workers’ compensation scheme, although it may voluntarily elect to do so. {73} Not only is this interpretation available to avoid the absurd result the majority opinion envisions, it also reflects this Court’s precedent. This Court has previously determined that the farm-and-ranch exclusion protects a farmer or rancher against workers’ compensation claims brought by employees who are not farm and ranch laborers. See Williams v. Cooper, 1953-NMSC-050, ¶¶ 10-13, 57 N.M. 373, 258 P.2d 1139. In Williams, this Court reversed an award ofworkers’ compensation because the statute excluded the workers’ compensation claim of an employee who was injured while constructing an addition to a dance hall that a rancher operated. 1953-NMSC-050, ¶¶ 10-13. This Court emphasized “‘the fact that it is not the nature of the particular work in which the employee is engaged at the time of his injury but rather the character of his employer’s occupation which controls . . . .’” Id. ¶ 7 (emphasis added) (quoting Rumley v. Middle Rio Grande Conservancy Dist., 1936-NMSC-023, ¶ 16, 40 N.M. 183, 57 P.2d 283). Accordingly, this Court held that “the occupation or pursuit of the defendant [which was ranching] did not subject him to liability under the act, even if at the moment the [non-ranching] work being done by the [non-ranch-laborer] plaintiff with a different factual background would have rendered his injury compensable [i.e. had the plaintiff worked for a non-rancher].” Id. ¶ 10. Williams is guiding precedent regarding the interpretation of the farm-and-ranch exclusion, yet the majority opinion avoids it. {74} Based on the text of the statute and our own precedent, this Court is compelled to read Section 52-1-6(A) as allowing the exclusion, not of farm and ranch laborers themselves, but of employers whose workforce is mainly comprised of farm and ranch laborers. This interpretation faithfully adheres to the text of Section 52-1-6(A). It effectuates the Legislature’s purpose to contain costs incurredbyNew Mexico’s farms and ranches. It avoids the absurd result of permitting any employer from excluding itself from the provisions of the WCA by hiring a few farm or ranch laborers. It follows this Court’s previous readings of the statute. See Williams, 1953-NMSC-050, ¶ 10. And, most importantly, it does not create a constitutionally infirm distinction. See Huey, 1973-NMSC-098, ¶ 6 (“[I]f a statute is susceptible to two constructions, ... a court should adopt the construction which will uphold its constitutionality.”). {75} Yet, for unconvincing reasons, the majority opinion adopts an alternative reading. First, the majority opinion relies on Griego v. Oliver to support its view that, contrary to the plain text of the statute, it may nevertheless adopt Cueto’s dubious interpretation in order to hold the statute unconstitutional. Maj. Op. ¶ 19 (citing Oliver, 2014-NMSC-003, ¶ 24). But Oliver is inapposite. The marriage statutes under review in Oliver could not be interpreted to authorize marriage between same-gender couples, which would have saved the statutes from constitutional challenge. See Oliver, 2014-NMSC-003, ¶¶ 19-24. By contrast, the plain text of Section 52-l-6(A) and this Court’s precedents support an interpretation that not only materially differs from the interpretation reached by Cueto and adopted by the majority opinion but which also saves Section 52-1-6(A) from the constitutional challenge at issue. {76} Second, the majority opinion’s reliance on Koger v. A.T. Woods, Inc. is misplaced. See Maj. Op. ¶ 20 (citing 1934-NMSC-020, ¶¶ 17-20, 38 N.M. 241, 31 P.2d 255). While Roger seemed to apply the exclusion based upon “the general nature of the object of employment [of the employee],” 1934-NMSC-020, ¶ 17, after Roger was decided, the Legislature amended the WCA to create an explicit exclusion for “employers ... of farm and ranch laborers.” Laws 1937, ch. 92, § 2 (emphasis added). Looking to that statute, this Court in Williams focused not on the employee’s primary job duties, nor on the particular work the employee was engaged in when injured, but rather expressly said that it is “the character of his employer’s occupation which controls ....” 1953-NMSC-050, ¶ 7 (emphasis added) (internal quotation marks and citation omitted). On thatbasis, this Court reversed an award of workers’ compensation benefits. Id. ¶ 13. {77} Third, the majority opinion erroneously grounds its interpretation on legislative silence. See Maj. Op. ¶ 20. Notwithstanding this Court’s own precedent, the majority opinion notes that the Cueto Court of Appeals interpreted Section 52-1 - 6(A) to allow the exclusion of only farm and ranch laborers from workers’ compensation coverage. The majority opinion then reasons that, because the Legislature did not subsequently amend the statute, the Legislature therefore intended a meaning different than what the text of the statute expressly provides. Maj. Op. ¶ 20 (citing Cueto, 1980-NMCA-036, ¶¶ 6-7). This reasoning is unpersuasive. {78} Inferences based on the Legislature’s silence subsequent to a court’s decision are an exceptionally weak method of statutory interpretation. See Zuber v. Allen, 396 U.S. 168, 185 (1969) (“Legislative silence is a poor beacon to follow in discerning the proper statutory route.”); Norman J. Singer and J.D. Shambie Singer, 2B Sutherland Statutory Construction § 49.9, at 124 (7th ed. 2012) (noting that legislative silence is “a weak reed upon which to lean” (internal quotation marks omitted)). Legislative silence is consistent with any number of judicial interpretations, no matter how erroneous. Further, the use of legislative silence as a method of statutory interpretation in this case is inappropriate. When the text of a statute is clear and unambiguous, as here, this Court gives effect to the text and refrains from further statutory interpretation. See, e.g., State v. Rivera, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939. {79} Even if it were sound to interpret Section 52-l-6(A) by drawing conclusions from the Legislature’s silence following Cueto, this is not a case where silence speaks volumes. In Cueto, the Court of Appeals enforced Section 52-l-6(A)’s exclusion, denying that a farmworker had a cause of action for workers’ compensation. Cueto, 1980-NMCA-036, ¶ 9. The Court of Appeals also summarily rejected the claim that the exclusion violated equal protection. Cueto, 1980-NMCA-036, ¶ 8 (citing Espanola Hous. Auth. v. Atencio, 1977-NMSC-074, 90 N.M. 787, 568 P.2d 1233). Given that the Court of Appeals not only properly rejected a workers’ compensation claim but also upheld the statute from an equal protection challenge, it is uncertain why the Legislature would have felt pressed to clarify its already unambiguous exclusion for employers of farm and ranch laborers. B. The majority opinion relies on inapposite if not questionable case law to conclude that the Legislature acted arbitrarily {80} Based on its interpretation of Section 52-1-6(A), the majority opinion concludes that the Legislature cannot allow farms and ranches to exclude farm and ranch laborers from workers’ compensation coverage while at the same time requiring farms and ranches to provide coverage for those employees who are not farm and ranch laborers (such as administrative staff). Maj. Op. ¶¶ 31-35. The majority opinion reasons that such an instance of line drawing, which it incorrectly imputes to the Legislature, would arbitrarily further the permissible legislative goal of containing costs for New Mexico farms and ranches. Maj. Op. ¶¶ 32-35. And the majority opinion reaons that such arbitrariness in serving the goal of cost containment renders Section 52-1 - 6(A) unconstitutional. Maj. Op. ¶¶ 32-35. {81} Assuming arguendo that Section 52-1 -6(A) means what the majority opinion reads it to mean and that the Legislature allocated a choice to farms and ranches only with respect to their laborers, the statute is still not unconstitutional. This Court has already deferred to similar instances of legislative line-drawing with respect to the farm-and-ranch exclusion. In Williams, which rejected the workers’ compensation claim of a non-ranch laborer injured while performing non-ranch work for a rancher, this Court recognized that it was bound to defer to the Legislature’s policy, even as we perceived that the line drawing was harsh. 1953-NMSC-050, ¶7- {82} What legal basis does the majority opinion have for taking the opposite approach? The majority opinion cites a single New Mexico case to support its view that the Legislature could not draw the line which the majority imputes to it: Schirmer v. Homestake Mining Co. See Maj. Op. ¶ 33 (citing Schirmer, 1994-NMSC-095, ¶¶ 9-10). Schirmer held that a ten-year statute of repose that extinguished employees’ claims for injuries resulting from occupational exposure to radioactive materials violated equal protection because the statute was arbitrarily related to “the valid legislative goal of lowering employer costs.” 1994-NMSC-095, ¶ 9. Some injuries caused by the occupational exposure to radiation, the Schirmer Court reasoned, were equally deserving of recovery even though they develop and accrue after the ten-year repose date. Id. Because of Schirmer, the majority opinion concludes that the Legislature, to lower costs to farms and ranches, could not allow farms and ranches to exclude the claims of only farm and ranch laborers. Maj. Op. ¶ 33. {83} But Schirmer was almost certainly incorrect when decided. See Coleman v. United Eng’rs & Constructors, Inc., 1994-NMSC-074, ¶ 10, 118 N.M. 47, 878 P.2d 996 (upholding a 10-year statute of repose from an equal-protection challenge); Terry, 1982-NMSC-047, ¶ 8 (same). Even if Schirmer were not incorrectly decided, the persuasiveness of its holding is wholly eroded by Garcia, 1995-NMSC-019, ¶¶ 17-18 (upholding the Medical Malpractice Act’s three-year statute of repose from an equal protection challenge). {84} In any event, Schirmer is distinguishable. Even if the Legislature drew a line between farm and ranch laborers who may be excluded from mandatory workers’ compensation and other agribusiness employees for whom coverage is required, that distinction would not be arbitrary in the same way that the 10-year repose statute in Schirmer is arbitrary. Section 52-l-6(A), unlike any statute of repose, does not itself necessarily bar some set of claims. In fact, Section 52-1-6(A) does not necessarily bar any claim. Rather, the statute allows, and has always allowed, each farm and ranch in New Mexico to decide for itself whether to provide workers’ compensation coverage for its employees who are farm and ranch laborers. {85} Further, the distinction that the majority opinion imputes to the Legislature is not arbitrarily related to the permissible legislative goal of containing costs for farms and ranches. Unlike the largest firms in agribusiness, not every farm or ranch in New Mexico employs a variety of workers. Many smaller farms and ranches in our State may only employ workers who could only be classified as “farm or ranch laborers.” To contain costs for those smaller operations, the Legislature may permissibly allow each farm and ranch to choose whether to participate in the workers’ compensation scheme. Again, because of the great diversity of farms and ranches operating in New Mexico’s agricultural industry, and because each is best positioned to know its cost structure and its tolerance for the risk of tort liability, the Legislature’s putative allocation of the choice to each farm and ranch to provide workers’ compensation coverage only for its farm and ranch laborers would advance its goal to aid New Mexico farms and ranches in a rational and efficient way. I repeat: 29% of New Mexico’s farms and ranches have elected to be subject to the WCA; 71% have not. As this Court heard at oral argument, the majority of the 29% of farms that have elected to be subject to the WCA are large operations. The Legislature’s decision to allocate a choice to farms to be subject to the WCA reflects “substantial and real distinction[s]” between the farms and ranches who choose to provide workers’ compensation coverage and those that do not. Schirmer, 1994-NMSC-095, ¶ 9. Those real and substantial distinctions track whether the farm is relatively large or small. {86} Therefore, Schirmer, even if it were not bad law, is so distinguishable as to provide no support for the majority opinion’s conclusion. The majority opinion treats Section 52-1-6(A) as though it furthered cost savings for farms and ranches by, for example, necessarily excluding workers’ compensation claims of left-handed farm and ranch laborers. But the legislation under review is nothing like that. The arbitrariness that the majority opinion perceives is simply not present either in the interpretation that the majority opinion imputes to the Legislature or in the statutory scheme that the Legislature actually enacted. C. The majority opinion’s application of a more stringent version of rational basis review confuses equal protection doctrine {87} Lastly, I disagree with the majority opinion’s application of the so-called “modern articulation” of the rational basis test that this Court first referenced in Trujillo v. City of Albuquerque. See 1998-NMSC-031, ¶ 32, 125 N.M. 721, 965 P.2d 305 (overruling, yet “subsuming” a heightened, less deferential form of rational basis analysis applied in Alvarez v. Chavez, 1994-NMCA-133, ¶¶ 16-23, 118 N.M. 732, 886 P.2d 461, and Corn v. N.M. Educators Fed. Credit Union, 1994-NMCA-161, ¶¶ 9-14, 119 N.M. 199, 889 P.2d 234). In Wagner, this Court explained that under the heightened form of rational basis review the party challenging a statute must show that it is not rationally related to a legitimate governmental purpose by “demonstrat[ing] that the classification created by the legislation is not supported by a ‘firm legal rationale’ or evidence in the record.’” 2005-NMSC-016, ¶ 24 (quoting Corn, 1994-NMCA-161^ 14). Wagner did not apply the heightened standard to invalidate legislation; instead, Wagner upheld the WCA’s attorney fee limitation from an equal protection challenge. 2005-NMSC-016, ¶ 32. Nevertheless, Wagner’s dicta regarding the emergence of a heightened form of rational basis review prompted a member of this Court to write separately. See 2005-NMSC-016, ¶¶ 37-40 (Bosson, C.J., concurring in part and dissenting in part). Justice Bosson noted that the Wagner majority failed to explain this “modern articulation” and, moreover, that the Wagner majority’s departure from traditional rational basis review was neither desirable nor appropriate. Id. {88} After Wagner, the “modern articulation” of rational basis review was buried for some years. Since that decision, this Court has employed rational basis review without reference to this heightened standard both in analyzing federal and state constitutional claims. See Kane, 2015-NMSC-027, ¶¶ 17-22 (analyzing a First Amendment challenge and concluding that the City of Albuquerque’s regulations prohibiting city employees from holding elective office “are rationally related to legitimate government purposes”); State v. Tafoya, 2010-NMSC-019, ¶ 26, 148 N.M. 391, 237 P.3d 693 (analyzing state and federal equal protection challenges and holding that a sentencing court’s discretion to award good time credit eligibility “is rationally related to the goals of punishment as well as rehabilitation”). This Court even explained New Mexico’s equal protection doctrine in detail and described rational basis review in its traditional form without so much as mentioning the so-called “modern articulation.” See Oliver, 2014-NMSC-003, ¶ 39. Also, in Morris v. Brandenburg, 2016-NMSC-_, ¶ 56, _ P.3d_, this Court determined thatNMSA 1978, Section 30-2-4, which makes it a crime to deliberately aid another in the taking of his or her own life, satisfied rational basis review because the statute rationally served legitimate state interests that this Court deemed to be “firm legal rationale[s];” however, the Morris Court merely repeated this talisman, again without explaining when a statute is, in fact, supported by a “firm legal rationale” (as opposed to any conceivable basis). And, now, for the first time, the majority opinion exercises the “modern articulation” to invalidate longstanding legislation. {89} As best as I can discern, the difference between the traditional and the “modern” versions of rational basis review lies in what is required to demonstrate that a legislative classification is rationally related to a legitimate governmental purpose. See Corn, 1994-NMCA-161, ¶ 14. Under traditional rational basis review, for a statute to serve a legitimate governmentpurpose, the proponent of constitutionality “need only establish the existence of a conceivable rational basis” for the statute. Kane, 2015-NMSC-027, ¶ 17 (second emphasis added) (internal quotation marks and citation omitted); see also State v. Cawley, 1990-NMSC-088, ¶ 9, 110 N.M. 705, 799 P.2d 574 (“The party objecting to the legislative classification has the burden to demonstrate that the classification bears no rational relationship to a conceivable legislative purpose.”); accord Heller v. Doe, 509 U.S. 312, 320 (1993) (“[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” (internal quotation marks and citations omitted)); Sullivan v. Stroop, 496 U.S. 478, 485 (1990) (“This sort of statutory distinction does not violate the Equal Protection Clause ‘if any state of facts reasonably may be conceived to justify it.” (internal quotation marks and citation omitted)). Accordingly, “a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data.” Heller, 509 U.S. at 320 (quoting FCC v. Beach Commc’ns, Inc., 508 U.S. 307, 313 (1970)); see also Wagner, 2005-NMSC-016, ¶ 39 (Bosson, C.J., concurring in part and dissenting in part). {90} By contrast, the majority opinion states that a statutory classification must be supported either by a “firm legal rationale” or “evidence in the record.” Maj. Op. ¶ 28. The majority opinion reasons that this standard separates N ew Mexico ’ s form of rational basis review for state equal protection claims from rational basis review for federal constitutional claims. See Maj. Op. ¶¶ 25-27. But it is not clear why the equal protection guarantee of the New Mexico Constitution should grant this Court more discretion to invalidate socioeconomic legislation than the federal constitutional analogue. UnderNew Mexico’s interstitial approach to determining state constitutional claims that have federal analogues (such as equal protection), this Court departs from the federal constitutional analysis only if the federal analysis is flawed or undeveloped or if there are characteristics distinctive to New Mexico that warrant a different constitutional analysis. State v. Gomez, 1997-NMSC-006, ¶ 20, 122 N.M. 1777, 932 P.2d 1. There is nothing distinctive or structurally different about New Mexico such that our judiciary should have a greater power to invalidate socioeconomic legislation. And I do not agree with the implicit premise that the traditional form of rational basis review used by every federal and state court — including this Court when considering federal constitutional challenges — is flawed. See, e.g., Kane, 2015-NMSC-027, ¶¶ 17-22 (applying traditional rational basis review). The maj ority opinion’s analysis overlooks that when a court, in employing traditional rational basis review, perceives that governmental regulation harbors an animus toward a particular group, rational basis review suddenly has a “bite.” Thus, rational basis review is a constitutionally discerning form of scrutiny, and not a flawed “rubber stamp.” Therefore, our interstitial approach does not permit the majority opinion’s departure from traditional rational basis review in this case. {91} There are additional problems with the majority opinion’s use of the “modern, articulation” of rational basis review. To repeat Justice Bosson’s observation in Wagner, the majority opinion does not explain what differentiates a “firm legal rationale” from any conceivable basis in the traditional form of rational basis review, as the bench and bar know it. The majority opinion even seemingly retreats from its own “evidence in the record” condition, as the majority opinion allows a justification for a statutory classification to be supported by outside-of-the-record, legislative facts of which a court can take judicial notice. See Maj. Op. ¶ 28. So, we are left with “firm legal rationale” as the only condition in the heightened standard that separates the “modern articulation” of rational basis review from its traditional counterpart. And there is simply no indication of what would constitute a “firm legal rationale” or how a “firm legal rationale” differs from any conceivable basis justifying a legislative choice. By requiring a “firm legal rationale,” the majority opinion overlooks that when the Legislature enacts socioeconomic legislation, the classifications and distinctions it creates may simply be the result of compromise and “are often impossible of explanation in strictly legal terms.” Romero, 319 F. Supp. at 1203. Accordingly, under traditional rational basis review, any conceivable basis justifying a legislative classification simply is a firm legal rationale to uphold a statute against an equal protection challenge. See, e.g., Heller, 509 U.S. at 320; Beach Commc’ns, 508 U.S. at 313. {92} Further, the majority opinion’s explanation of the “evidence in the record” condition is in tension with its requirement for a “firm legal rationale.” By permitting a court to consider sua sponte legislative facts outside of the record, the so-called heightened standard suggests that a court may, in fact, attempt to conceive of any permissible legislative purpose that the statute under review rationally serves. Hence, there is nothing to the “modern articulation” that should separate it from traditional rational basis review, and because Section 52-1-6(A) conceivably serves the legislative purpose of cost containment, it survives rational basis review. {93} Instead of explaining the “modern articulation,” the maj ority opinion simply uses the words “firm legal rationale” as a license to determine that Section 52-1-6(A) is unconstitutional because it is “underinclusive” with respect to its putative purpose. Maj. Op. ¶¶ 29-35. According to the majority opinion, because Section 52-1-6(A) allows for the exclusion of farm and ranch laborers (but not other farm and ranch employees) from workers’ compensation coverage, it is underinclusive with respect to the permissible legislative purpose of cost containment. See Maj. Op. ¶¶ 32-35. The majority opinion implies that if the Legislature really had wanted to control costs for New Mexico’s farms and ranches, it would have allowed farms and ranches to exclude all of their employees, not just their farm and ranch laborers. See id. The irony, of course, is that this is exactly what the Legislature did. But, again assuming the majority opinion’s statutory interpretation arguendo, such underinclusiveness does not call into question the constitutionality of the statute. {94} It is the longstanding law of rational basis scrutiny — both in the federal and state constitutional context — that a legislative body, when enacting socioeconomic legislation, can solve a problem piecemeal and that such underinclusiveness with respect to that purpose poses no constitutional flaw.[6] By contrast, when applying intermediate scrutiny and strict scrutiny, courts check to determine if a statutory classification is narrowly tailored to a legislative purpose — i.e., whether the statutory classification is under- or overinclusive with respect to its putative purpose. See, e.g., In re Vincent, 2007-NMSC-056, ¶ 15, 143 N.M. 56, 172 P.3d 605 (“[F]or a challenged provision to be narrowly tailored to serve a compelling state interest under a strict scrutiny analysis, it must not be under-inclusive.”). {95} Tobe sure, a tailoring analysis can be useful to discern whether the Legislature created a discriminatory classification with animus toward a particular, discrete group and disguised that animus with a socioeconomic rationale. See, e.g., Romer v. Evans, 517 U.S. 620, 632 (1996) (“[The] sheer breadth [of Colorado’s Amendment 2 prohibiting governmental action designed to protect gay and lesbian persons from discrimination] is so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class it affects; it lacks a rational relationship to legitimate state interests.”); City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 449-50 (1985) (holding that a city’s requirement of a special use permit for the operation of a home for the mentally disabled was under-inclusive with respect to the city’s putative purposes and, therefore, rested “on an irrational prejudice against the mentally [disabled]”). If a statutory classification is highly under- or overinclusive with respect to an ostensible legislative goal, then there exists good reason to believe that the legislative body had an ulterior, impermissible motive. See, e.g., Romer, 517 U.S. at 632; City of Cleburne, 473 U.S. at 449-50. Because rational basis review-demands and searches for a permissible governmental purpose, it is not a rubber stamp for state action. But apart from determining a statute’s legislative purpose (and thus whether that purpose is permissible), an inspection for underinclusiveness has no place in rational basis review. Otherwise, our doctrinal categories provide no guarantee of the separation of powers, and a court may apply a more stringent standard of review simply because it disagrees with the policy of the statute under review. See, e.g., San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 31 (1973) (finding that if the degree of judicial scrutiny of legislation fluctuated depending solely on a court’s preference for a statute’s purpose and effect, then the court would assume “a legislative role” for which it lacks “both authority and competence”). {96} The majority opinion’s inspection for underinclusiveness does not even justify its holding. Here, the majority opinion’s tailoring analysis simply does not result in a conclusion that the Legislature, since 1917, has acted with animus toward farm and ranch laborers. A statutory scheme that permits 29% of farms and ranches- — most of which are large firms, likely employing hundreds of farm and ranch laborers — to voluntarily provide workers’ compensation coverage to their employees is-not a statute that harbors an ulterior motive to discriminate against farm and ranch workers. Neither the statutory scheme nor the record indicates that for 99 years the Legislature has acted with an impermissible, discriminatory animus against farmworkers. Rather, the Legislature has rationally acted to contain costs for New Mexico’s economically precarious farms and ranches so that they may continue to operate. III. CONCLUSION {97} The law of statutory interpretation and the law governing judicial review of legislation safeguard the separation ofpowers. This Court may not contort these areas of law to nullify validly-enacted legislation simply because we happen to believe that a statute is unfair or that its unfairness outweighs any other consideration that bears on the Legislature’s decision. While I understand the unfairness that may be perceived in the treatment of laborers who work for farms and ranches'electing exemption from the WCA, I also understand the burden that may fall upon small New Mexico farms and ranches in having to incur regulatory costs more easily borne by their large competitors in the agricultural industry. The Legislature enacted a statutory scheme that encompasses both employer and employee concerns and is eminently constitutional. I respectfully dissent. JUDITH K. NAKAMURA, Justice As the majority opinion notes, materials related to Griego v. New Mexico Workers’ Compensation Administration were attached by Aguirre before the Workers’ Compensation Judge and accordingly form a part of the record in this case. See Maj. Op., ¶ 4. See, e.g., Collins v. Day, 644 N.E.2d 72, 82 (Ind. 1994) (holding that exemption for agricultural employers and employees from mandatory workers’ compensation coverage did not violate the equal privileges and immunities guarantee of the state constitution); Haney v. N.D. Workers Comp. Bureau, 518 N.W.2d 195, 202 (N.D. 1994) (holding that statutory provision excluding agricultural employees from mandatory workers’ compensation coverage did not violate state equal protection guarantee); Baskin v. State ex rel. Worker’s Comp. Div., 722 P.2d 151, 156 (Wyo. 1986) (holding “exception of ‘ranching and agriculture’ from extra-hazardous occupations of teaming and truck driving and motor delivery” subject to mandatory workers compensation’ coverage did not violate state or federal equal protection guarantees); Eastway v. Eisenga, 362 N.W.2d 684, 689 (Mich. 1984) (holding that exemption for some agricultural employers from mandatory participation in workers’ compensation scheme did not violate either federal or state equal protection guarantees); Ross v. Ross, 308 N.W.2d 50, 53 (Iowa 1981) (rejecting federal equal protection challenge to statute exempting employers of familial farmworkers from compulsory participation in workers’ compensation scheme); Otto v. Hahn, 306 N.W.2d 587, 592 (Neb. 1981) (rejecting federal equal protection challenge to statute excluding employers of farmworkers from mandatory participation in workers’ compensation scheme); Fitzpatrick v. Crestfield Farm, Inc., 582 S.W.2d 44, 45 (Ky. App. 1978) (holding that exemption for employers “engaged solely in agriculture” from mandatory participation in workers’ compensation scheme did not violate state or federal equal protection guarantees); Anaya v. Indus. Comm’n, 512 P.2d 625, 626 (Colo. 1973) (holding that the “exclusion of farm and ranch labor” from mandatory workers’ compensation benefits did not violate equal protection (citing Romero v. Hodgson, 319 F. Supp. 1201, 1203 (N.D. Cal. 1970) (per curiam, three-judge court), aff'd 403 U.S. 901 (1971) (holding that exclusion of agricultural labor from the definition of employment in both California and federal unemployment compensation statutes did not violate the federal equal protection guarantee)); State ex rel. Hammond v. Hager, 563 P.2d 52, 57 (Mont. 1972) (holding that exclusion for “employers engaged in farming and stock raising” from workers’ compensation scheme didnot violate the federal equal protection guarantee); Sayles v. Foley, 96 A. 340, 344 (R.I. 1916) (holding that exclusion for farm laborers and other laborers involved in agricultural pursuits from state workers’ compensation scheme did not violate state or federal constitutions); Hunter v. Colfax Consol. Coal Co., 154 N.W. 1037, 1052-53 (Iowa 1915) (same); In re Opinion of Justices, 96 N.E. 308, 315 (Mass. 1911) (concluding that exclusion of farm laborers from provision of workers’ compensation act provision modifying common law defenses to common law negligence claims did not violate the federal constitution); see also Middleton v. Tex. Power & Light Co., 249 U.S. 152, 162 (1918) (concluding that Texas Employer’s Liability Act’s exclusion from mandatory insurance coverage for injuries sustained by, inter alia, farm laborers did not violate the federal equal protection guarantee); New York Central R.R. Co. v. White, 243 U.S. 188, 208 (1916) (concluding that the exclusion of farm laborers from New York workers’ compensation scheme did not violate the federal equal protection guarantee). See, e.g., Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 466 (1981) (rejecting an equal protection challenge because “a legislature need not ‘strike at all evils at the same time or in the same way’” (quoting Semler v. Or. State Bd. of Dental Exam'rs, 294 U.S. 608, 610 (1935)); Vance v. Bradley, 440 U.S. 93, 108 (1979) (rejecting an equal protection challenge because “[ejven if the classification involved here is to some extent both undcrinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this ‘perfection is by no means required’” (internal citation omitted)); City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (“Legislatures may implement their program stop by step, in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations.” (internal citations omitted)); Erznoznik v. City of Jacksonville, 422 U.S. 205, 215 (1975) (“This Court frequently has upheld undcrinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it.” (internal citations omitted)); Williamson v. Lee Optical of Okl., 348 U.S. 483, 489 (1955) (“[T]he reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.” (internal citations omitted)); Ry. Express Agency v. New York, 336 U.S. 106, 110 (1949) (“It is no requirement of equal protection that all evils of the same genus be eradicated or none at all.”); see also, e.g., Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 32, as corrected (Mar. 4,2016) (“Amere overinclusiveness or underinclusivcness in statutory classification will not necessarily show a failure to satisfy a rational-basis review.”); Lonaconing Trap Club, Inc. v. Md. Dep’t of Env’t, 978 A.2d 702, 713 (Md. 2009) (“Underinclusiveness does not create an equal protection violation under the rational basis test.”).